*1318
 
 OPINION
 

 Per Curiam:
 

 This is a question of first impression in the state of Nevada. The issue is whether NRS 200.508, a statute criminalizing child endangerment, applies to a mother’s prenatal substance abuse which results in the transmission of an illegal substance to her child through the umbilical cord during the time after the child leaves the womb and the time the umbilical cord is severed. Respondent Cathy Encoe (“Encoe”) was charged with a violation of NRS 200.508 after her child tested positive for metham-phetamines shortly after his birth. The district court granted her pretrial petition for writ of habeas corpus, and the state appealed. We conclude that NRS 200.508 does not apply to the transmission of illegal substances from mother to newborn through the umbilical cord and affirm the district court’s order.
 

 Encoe gave birth to her child in December 1992 at the Washoe Medical Center. She completed a prenatal questionnaire stating that she had used marijuana during her pregnancy. The hospital, per its protocol, took a urine sample from the infant for the purpose of performing a routine drug screen. The sample tested positive for amphetamines and methamphetamines.
 

 The state then filed a criminal complaint against Encoe, alleging one count of Willfully Endangering A Child as the Result of Child Abuse in violation of NRS 200.508. Based on evidence adduced at the preliminary hearing, Encoe was bound over for trial. She entered a plea of not guilty at her arraignment.
 

 Thereafter, Encoe filed a pretrial petition for writ of habeas corpus. Following a hearing on the matter, the court below issued an order granting relief. The state appeals, contending that the lower court erred in granting Encoe’s petition.
 

 Encoe was charged with the crime of willfully endangering a child pursuant to NRS 200.508, which reads in pertinent part:
 

 Any person who . . . [wjillfiilly causes a child who is less than 18 years of age to suffer unjustifiable physical pain or
 
 *1319
 
 mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect ... is guilty of a gross misdemeanor unless a more severe penalty is prescribed by law for an act or omission which brings about the abuse, neglect or danger.
 

 NRS 200.508(1).
 

 Although the state concedes that a fetus cannot be considered a child for the purposes of NRS 200.508, it maintains that Encoe violated the statute from the moment her child left the womb to the moment the umbilical cord was severed. During that brief period, the state argues, Encoe administered methamphetamine to her child through the umbilical cord. According to the state, this was an act of endangerment proscribed by the statute.
 

 The proper construction of a statute is a legal question rather than a factual question. Nyberg v. Nev. Indus. Comm’n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984). This court has noted that:
 

 Penal statutes should be so clear as to leave no room for doubt as to the intention of the legislature, and where a reasonable doubt does exist as to whether the person charged with a violation of its provisions is within the statute, that doubt must be resolved in favor of the individual.
 

 Sheriff v. Hanks, 91 Nev. 57, 60, 530 P.2d 1191, 1193 (1975). In Ex Parte Deidesheimer, 14 Nev. 311, 317-18 (1879), this court recognized that due process prohibits courts from interpreting existing laws in an unforeseeable or unintended manner. Applying these rules of statutory construction, we conclude that prosecuting a mother for the delivery of a controlled substance to her child through the umbilical cord is a strained and unforeseen application of NRS 200.508. To interpret this section to cover a mother’s ingestion of illegal substances prior to the birth of her child would be a radical incursion upon existing law. A person may not be punished for a crime unless her acts fall clearly within the language of the statute. The specific language of NRS 200.508 does not allow the strained construction advanced by the state.
 

 To hold otherwise would ascribe to the legislature the intent to criminalize the conduct of women who ingest any substance that has the potential to harm a fetus. This would open the floodgates to prosecution of pregnant women who ingest such things as alcohol, nicotine, and a range of miscellaneous, otherwise legal, toxins. As stated recently and persuasively by the Kentucky Supreme Court in a case factually similar to this one:
 

 If the statutes at issue are applied to women’s conduct during
 
 *1320
 
 pregnancy, they could have an unlimited scope and create an indefinite number of new ‘crimes.’ In short, the District Attorney’s interpretation of the statutes, if validated, might lead to a ‘slippery slope’ whereby the law could be construed as covering the full range of a pregnant woman’s behavior — a plainly unconstitutional result that would, among other things, render the statutes void for vagueness.
 

 Commonwealth v. Welch, 864 S.W.2d 280, 283 (Ky. 1993) (citation omitted).
 

 Courts in other jurisdictions have also held that the respective criminal statutes did not apply to the passage of harmful substances from a mother to her child through the umbilical cord.
 
 See, e.g.,
 
 Commonwealth v. Welch, 864 S.W.2d 280 (Ky. 1993); Johnson v. State, 602 So. 2d 1288 (Fla. 1992); State v. Gray, 584 N.E.2d 710 (Ohio 1992); People v. Hardy, 469 N.W.2d 50 (Mich. Ct. App. 1991). These cases address statutes similar in effect to the one at issue here in Nevada. All of these courts concluded that, properly construed, the statutes involved do not intend to punish an expectant mother’s drug use which is potentially injurious to her child. Each court reasoned that such a construction renders the statute impermissibly vague. These courts also held that if their respective state legislatures intended to include a pregnant woman’s drug use among the type of conduct that is criminally prohibited, they would have done so expressly.
 

 The legislature is an appropriate forum to discuss public policy, as well as the complexity of prenatal drug use, its effect upon an infant, and its criminalization.
 
 Hardy,
 
 469 N.W.2d at 53. Because “the issue involves many competing societal, economic, and policy considerations, the legislative procedures and safeguards are well equipped to the task of fashioning an appropriate change, if any.” Hinegardner v. Marcor Resorts, 108 Nev. 1091, 1096, 844 P.2d 820, 804 (1992). The Nevada legislature apparently debated a bill which would have allowed for the criminal prosecution of prenatal substance abuse. In the 1991 session, the Assembly Health and Welfare Committee discussed Assembly Bill 729 (“A.B. 729”) providing for the mandatory testing of newborn babies for the presence of alcohol or controlled substances. However, that bill went no further than the committee. A.B. 729 read in pertinent part:
 

 4. If the baby is suffering from congenital drug addiction or the fetal alcohol syndrome, the local health officer of the county or city within which the baby or the mother of the baby resides shall report the condition to the district attorney for that county for evaluation of the appropriateness of
 
 *1321
 
 invoking protective services and custody pursuant to chapter 432B of NRS and of prosecuting the mother for child abuse or neglect.
 

 The proposed bill created the possibility of prosecution of a mother for causing her child to suffer congenital drug addiction or fetal alcohol syndrome. In committee, several members voiced their concern over the intent of A.B. 729 to incarcerate mothers who had caused their children to have alcohol or controlled substances in their blood. One member stated that she “did not think it served any useful purpose to prosecute” and she would “be more inclined to put the women in some type of program to rehabilitate them.”
 
 [1]
 
 Two other spokespersons stated that prenatal addiction should be perceived of as a health, child protection and family preservation issue in Nevada rather than a criminal prosecution issue.
 
 [2]
 
 They advocated that Section 4 of A.B. 729 be deleted or amended so that mothers would not be charged.
 

 A.B. 729 never passed beyond the Health and Welfare Committee. It is evident from the hearing transcript that the legislators were concerned with the criminal prosecution aspect of prenatal drug use. We conclude that the legislature’s examination of this issue and its subsequent silence indicates that prenatal drug use not be criminally prosecuted. At the very least, the introduction of A.B. 729 shows that the legislature did not believe that the existing child endangerment statute, NRS section 200.508, covered prosecution of pregnant mothers for drug use.
 

 Furthermore, we reject the state’s policy argument that charging women with child endangerment for the transmission of illegal substances through the umbilical cord provides a strong deterrent against unlawful drug use by pregnant women and encourages them to seek drug treatment. The legislators debating A.B. 729 indicated that the prosecution of these women would likely have the opposite effect. A woman may abort her child or avoid prenatal care or treatment out of fear of prosecution. By failing to enact A.B. 729, the legislators apparently found that the state’s interest is better served by making treatment programs available to pregnant addicts rather than by driving them away from treatment by criminal sanctions and thus further endangering the life and health of the child.
 

 NRS 200.508 does not apply to a pregnant woman’s ingestion of illegal substances and the resulting transmission of these sub
 
 *1322
 
 stances to her child through the umbilical cord. We conclude that if the Nevada legislature intended to criminalize prenatal substance abuse, it would have enacted a statute to that effect. Thus, the district court properly granted respondent Encoe’s petition for writ of habeas corpus because her conduct is not subject to prosecution under NRS section 200.508.
 

 [1]
 

 Minutes of the Nevada Assembly Committee on Health and Welfare, 66th Sess., 1046 (June 6, 1991) (remarks of Mrs. C. Freeman, Vice Chairperson).
 

 [2]
 

 Liz Breashers, Chief, Bureau of Alcohol and Drug Abuse and Janine Hansen, President, Nevada Eagle Form. Minutes of the Nevada Assembly Committee on Health and Welfare, 66th Sess., 1049 (June 6, 1991).