On October 5, 2001, Anthony Jerell McClain was indicted for second-degree domestic violence based on his second-degree assault of his wife, a violation of §§ 13A-6-21 and 13A-6-131(a), Ala. Code 1975. On March 29, 2004, McClain filed a motion to dismiss the indictment against him. On May 26, 2004, the trial court conducted a hearing on the motion to dismiss. At the conclusion of the hearing, the trial court granted the motion and dismissed the indictment against McClain.
Since his release on bond in 2002, McClain had been undergoing court-ordered psychiatric evaluation, which revealed that McClain was mentally retarded. McClain's psychiatric evaluation began with Dr. Karl Kirkland on August 7, 2002. On August 28, 2002, the State filed a motion to withdraw the case against McClain, with leave to reinstate. The trial court so ordered, and the State took no further action. Ten months after the evaluation had been concluded, on March 29, 2004, McClain filed the motion to dismiss. The State did not file a motion to reinstate until May 27, 2004, the day after the trial court held a hearing and dismissed the indictment. This appeal followed without a ruling on the State's motion to reinstate.
In his motion to dismiss, and at the hearing, McClain's counsel explained that McClain and his wife had reconciled and that they had had two children since the incident in question. During the hearing, McClain's wife testified that she did not want to pursue the case. She also testified that, approximately a week after the charge was filed, she tried to drop the charge against McClain, but that two people from the district attorney's office had told her she could not do so. McClain's wife testified that she and McClain lived together and that they had lived together for four or five years. She testified that she and McClain had not had any problems since the incident in question.
After McClain's wife testified, the following exchange occurred:
 "[Prosecutor]: Your Honor, I would — if the Court is inclined to dismiss or have me to nol pros this case, I would be inclined —
"THE COURT: I'm not asking you to nol pros it.
 "[Prosecutor]: I would be inclined to ask that court costs be paid in this because you just can't use the system like this. She made a complaint, signed a warrant going to the police department and has brought this situation to this point. Now she wants to say she doesn't want to testify.
 "THE COURT: Well, I'm impressed by the fact that she told it two weeks after this thing started.
 "[Prosecutor]: Well, who could she have told two weeks after it started? The police?
"THE COURT: I guess. *Page 56 
". . . .
 "THE COURT: But I want to know how the State is going to prosecute without a victim?
 "[Prosecutor]: Your Honor, all I can say to you is that this is a very serious — it was a very serious crime. First of all, the defendant shot at her twice, missed her, followed her into a — followed her into a convenience store and hit her with an automobile.
"THE COURT: And she's still there with him?
 "[Prosecutor]: She's still there with him. You know, I don't know what to say about that, Your Honor.
 "THE COURT: And she doesn't — now, let me ask you something, now: You got any other witnesses to the crime besides her?
 "[Prosecutor]: I believe there was a Hal Hudson who was involved. I don't know how he was involved in the case, Your Honor.
 "THE COURT: All right. So, ma'am, now, you're telling this Court today on record you do not want to prosecute this case?
"[Witness]: No, I do not.
 "THE COURT: All right I'll grant the motion to dismiss."
(R. 8-10.)
Rule 13.5(c)(1), Ala. R.Crim. P., provides:
 "A motion to dismiss the indictment may be based upon objections to the venire, the lack of legal qualifications of an individual grand juror, the legal insufficiency of the indictment, or the failure of the indictment to charge an offense."
The State is correct in its assertion that Rule 13.5(c)(1) does not provide for the dismissal of an indictment based on the insufficiency of the evidence or, as is the case here, an apparent lack of evidence.
We addressed a similar situation in State v. Edwards,590 So.2d 379 (Ala.Crim.App. 1991). In Edwards, the trial court had granted Edwards's motion to dismiss the indictment and, in doing so, had stated:
 "`There is only one thing for me to consider at this point and that is the motion to dismiss and the issue of the corpus delicti. . . . I feel that there must be some definite criminal agency involved or some criminally responsible act to have been performed and the evidence has to substantiate that. . . . The Court is compelled by law to grant the motion to dismiss and the Court does so grant the motion to dismiss.'"
590 So.2d at 380. On appeal, the Court reversed the trial court's dismissal, holding that "[e]stablishing the corpus delicti requires proof of facts by the state so entwined with the merits of the case that a decision as to whether it had been proved should not be made prior to trial but should be postponed until trial." Id.
In the case before us, the trial court apparently dismissed the indictment based on a lack of evidence. According to Edwards
and Rule 13.5(c)(1), that is not a viable basis for dismissing an indictment. Although we understand the basis for the trial judge's frustration, we are nonetheless bound to follow the law. The judgment of the trial court is reversed and the cause is remanded.
REVERSED AND REMANDED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur. *Page 677