STATE of Missouri, Appellant,

v.

Janet S. WADE, Respondent.

No. WD 67363.

Missouri Court of Appeals,
Western District.

Sept. 11, 2007.

Pamela K. Blevins, Esq., St. Joseph, MO, for Appellant.

Ellen H. Flottman, Esq., Columbia, MO, for Respondent.

Before HARDWICK, P.J., RUSSELL and DODSON, Sp. J.

LISA WHITE HARDWICK, Judge.

The State of Missouri appeals from the circuit court's dismissal of a child endangerment charge against Janet Wade. For reasons explained herein, we affirm the dismissal judgment.

FACTUAL AND PROCEDURAL HISTORY

Janet Wade gave birth to her son, T.L.W., on August 21, 2005. The following day, both Wade and the child tested positive for marijuana and methamphetamine.

The State filed a felony information charging Wade with first-degree child endangerment, Section 568.045.1, R.S.Mo. (Cum.Supp.2006), for causing a substantial risk to T.L.W.'s health by using marijuana and methamphetamine during her pregnancy. Wade moved to dismiss the charge. Following a hearing on the motion, the circuit court found the information was deficient because the child endangerment statute could not be applied to parental conduct involving an unborn child. The court entered a judgment dismissing the felony information without prejudice. The State appeals.

## Jurisdiction

■ As a preliminary matter, Wade asserts this court lacks appellate jurisdiction because the dismissal was granted without prejudice and, therefore, was not a final judgment for purposes of appeal. *See State v. Burns,* 994 S.W.2d 941, 942–43 (Mo. banc 1999). The State responds that this case falls within a judicially created exception wherein a dismissal without prejudice is appealable it if has "the practical effect of terminating the litigation in the form in which it is cast or in the plaintiff's chosen forum[.]" *Fitzpatrick v. Hannibal Reg'l Hosp.,* 922 S.W.2d 840, 842 (Mo.App.1996).

Here, the circuit court made a specific finding that the dismissal would not foreclose the State from filing "other criminal charges under the facts alleged in this case" against Wade. That finding refers to other charges related to Wade's unlawful drug possession and use, and not to the refiling of the child endangerment charge. During oral argument of this appeal, the State acknowledged that it could not amend the child endangerment charge to cure the deficiency cited by the circuit court. Further, the State acknowledged that it is unaware of any other charges that could be filed against Wade based on the allegations in the information. Because the dismissal effectively terminated any litigation on the issue of child endangerment, the judgment is final and within our appellate jurisdiction.

## Analysis

■ Section 568.045 provides that a person commits the felony of first-degree child endangerment by "knowingly act[ing] in a manner that creates a substantial risk to the life, body, or health of a child less than seventeen years old[.]" The State charged Wade with violating this statute by using illegal drugs while she was pregnant and thereby creating "a substantial risk to the life and body and health of T.L.W., a child less that seventeen years old." The circuit court dismissed the charge because it determined the child endangerment statute could not be applied to a mother's conduct against her unborn child. The State contends the court erred in interpreting Section 568.045 because the term "a child less than seventeen years old" necessarily includes an unborn child from the moment of conception until birth.

■ "'Statutory interpretation is an issue of law which this court reviews *de novo.*'" *State v. Lewis,* 188 S.W.3d 483, 486 (Mo.App.2006) (quoting *State ex rel. Nixon v. Premium Standard Farms, Inc.,* 100 S.W.3d 157, 161 (Mo.App.2003)). The goal of such interpretation is to ascertain the intent of the legislature from the language of the statute, considering the words used in their plain and ordinary meaning, and to give effect to that intent, if possible. *Id.* at 486–87.

Section 568.045 does not define the word "child" beyond the description of "less than seventeen years old." The only definition for "child" in Chapter 568 (dealing with Crimes Against the Family) relates to cases involving criminal nonsupport. In that regard, Section 568.040 RSMo. (2000) states that a " 'Child' means any biological or adoptive child, or any child whose relationship to the defendant has been determined, by a court of law in a proceeding for dissolution or legal separation, to be that of child to parent[.]" This definition does not appear to include a child in-utero, and the overall context of the nonsupport statute indicates that it strictly applies to children who have already been born. In reviewing the plain language of Section 568.045 and Chapter 568 in general, we find nothing to suggest that the legislature intended the term "child" to refer to a fetus.

The State argues Missouri courts have previously relied on Section 1.205 in determining that an unborn child is a person for purposes of applying criminal and civil liability statutes. Section 1.205.1 provides that "[t]he life of each human being begins at conception" and "[u]nborn children have protectable interests in life, health, and well-being." Section 1.205.2 further states that Missouri laws shall be interpreted to acknowledge that an unborn child has "all the rights, privileges, and immunities available to other persons." Consistent with these provisions, Missouri courts have upheld murder and manslaughter convictions, as well as wrongful death judgments, against *third parties* for causing the death of an unborn child. *State v. Holcomb,* 956 S.W.2d 286 (Mo.App.1997) (murder); *State v. Knapp,* 843 S.W.2d 345 (Mo. banc 1992) (manslaughter); *Connor v. Monkem Co.,* 898 S.W.2d 89 (Mo.banc1995) (wrongful death).

Although Section 1.205 generally provides legal authority for protecting the rights of unborn children, the statute creates an exception in situations when a mother allegedly causes harm to her unborn child. Section 1.205.4 provides:

> Nothing in this section shall be interpreted as creating a cause of action against a woman for indirectly harming her unborn child by failing to properly care for herself or by failing to follow any particular program of prenatal care.

This provision precludes any effort to prosecute a mother who causes indirect harm to her fetus by ingesting illegal drugs during her pregnancy and, thereby, fails to properly care for herself. The statute indicates the legislature's intent to avoid criminalizing the lack of proper prenatal care. Consistent with the exception provided in Section 1.205.4, we have found no Missouri cases allowing criminal or civil actions to proceed against a mother whose pregnancy-related misconduct allegedly caused harm to her unborn child.

The State of Missouri is not alone in barring the prosecution of mothers who fail to exercise proper prenatal care. Of fifteen state courts addressing this issue, fourteen have ruled that a mother cannot be held criminally liable for conduct harmful to her fetus.[1] One reason why courts have disallowed such criminal charges is that it would be difficult to determine what types of prenatal misconduct should be subject to prosecution.[2] Here, the State argues that criminal liability should arise when an unborn child is injured as a result of the mother's unlawful conduct, such as the use of illegal drugs. However,

---

1. State court decisions disallowing the prosecution of a mother for pregnancy-related misconduct include: *Reinesto v. Superior Court of State In and For County of Navajo,* 182 Ariz. 190, 894 P.2d 733 (Ariz.Ct.App.1995); *Reyes v. Superior Court,* 75 Cal.App.3d 214, 141 Cal.Rptr. 912 (Cal.Ct.App.1977); *State v. Gethers,* 585 So.2d 1140 (Fla.Dist.G.App. 1991), and *Johnson v. State,* 602 So.2d 1288 (Fla.1992); *State v. Luster,* 204 Ga.App. 156, 419 S.E.2d 32 (Ga.Ct.App.1992); *State v. Aiwohi,* 109 Hawai'i 115, 123 P.3d 1210 (Haw. 2005); *Commonwealth v. Welch,* 864 S.W.2d 280 (Ky.1993); *Kilmon v. State,* 394 Md. 168, 905 A.2d 306 (Md.2005); *Sheriff, Washoe County, Nevada v. Encoe,* 110 Nev. 1317, 885 P.2d 596 (Nev.1994); *State v. Martinez,* 139 N.M. 741, 137 P.3d 1195 (N.M.App.2006);

*People v. Morabito,* 151 Misc.2d 259, 580 N.Y.S.2d 843 (Geneva City Ct.1992); *State v. Gray,* 62 Ohio St.3d 514, 584 N.E.2d 710 (Oh.1992); *Richards v. State,* 2005 WL 2138244 (Tenn.Crim.App.2005); *Collins v. State,* 890 S.W.2d 893 (Tex.Ct.App.1994); *State v. Dunn,* 82 Wash.App. 122, 916 P.2d 952 (Wash Ct.1996); *State v. Deborah J.Z.,* 228 Wis.2d 468, 596 N.W.2d 490 (Wis.Ct.App. 1999). The only state court decision that has allowed such a prosecution is South Carolina. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (S.C.1997).

2. *See Kilmon,* 905 A.2d at 311; *Welch,* 864 S.W.2d at 283.

the mother is already subject to prosecution for such unlawful activity, and the only purpose of allowing additional pregnancy-related charges would be to protect the interest of the fetus. Given that goal of protection, the logic of allowing such prosecutions would be extended to cases involving smoking, alcohol ingestion, the failure to wear seatbelts, and any other conduct that might cause harm to a mother's unborn child. It is a difficult line to draw and, as such, our legislature has chosen to handle the problems of pregnant mothers through social service programs instead of the court system.

The General Assembly has enacted a series of statutes to provide prenatal education and treatment for mothers and postnatal care for children who may be affected by alcohol, drug, or cigarette use. Sections 191.725–191.745 R.S.Mo. (2000). Pregnant mothers must be given access to substance abuse treatment on a "first-priority" basis. Section 191.731. The law directs the Department of Social Services to provide protective and preventative services for children exposed to harmful substances, as indicated by toxicology testing at birth. Sections 191.737, 191.739.

This statutory scheme is a further indication of the legislature's intent to avoid the criminal prosecution of mothers whose addictive behaviors may indirectly harm their unborn children. The plain language of the child endangerment statute does not proscribe conduct harmful to fetuses, and Section 1.205.4 clearly prohibits any cause of action against a mother for improper prenatal care. In light of these factors, the circuit court correctly determined that Wade could not be prosecuted for child endangerment based on her pregnancy-related conduct. The felony indictment was properly dismissed because the factual allegations did not constitute a violation of Section 568.045.1.

While it may be clear that Wade's misconduct has created substantial health risks for T.L.W., the questions of whether and how the State can intervene to protect the child's rights are governed by legislative authority. We must apply the law as written and respect the General Assembly's decision to avoid criminal prosecution of mothers in favor of providing education, treatment, and protection of the child through social services.

The judgment of dismissal is affirmed.

All concur.