BURKE, Judge.
Hope Elisabeth Ankrom pleaded guilty to chemical endangerment of a child, a violation of § 26-15-3.2, Ala. Code 1975. The trial court sentenced Ankrom to three years in prison, but the court suspended that sentence and placed her on one year of supervised probation. Ankrom appealed her conviction. We affirm.

Facts and Procedural History

At the guilty-plea hearing, the parties stipulated to the following facts:
“On January 31, 2009, the defendant, Hope Ankrom, gave birth to a son, [B.W.], at Medical Center Enterprise. Medical records showed that the defendant tested positive for cocaine prior to giving birth and that the child tested positive for cocaine after birth.
“Department of Human Resources worker Ashley Arnold became involved and developed a plan for the care of the child. During the investigation the defendant admitted to Ashley that she had used marijuana while she was pregnant but denied using cocaine.
*376 “Medical records from her doctor show that he documented a substance abuse problem several times during her pregnancy and she had tested positive for cocaine and marijuana on more than one occasion during her pregnancy.”
On February 18, 2009, Ankrom was arrested and charged with chemical endangerment of a child. On August 25, 2009, the grand jury indicted Ankrom. The indictment stated that Ankrom “did knowingly, recklessly, or intentionally cause or permit a child, to-wit: [B.W.], a better description of which is to the Grand Jury otherwise unknown, to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260 of the Code of Alabama, 1975, to-wit: Cocaine, in violation of Section [26 — 15—3.2(a)(1) ].”
On September 25, 2009, Ankrom filed a motion styled as a “Motion to Dismiss Indictment.” In that motion, after setting forth the facts, Ankrom argued that “[t]he plain language of [§ 26-15-3.2, Ala.Code 1975,] shows that the legislature intended for the statute to apply only to a child, not a fetus”; that “courts in other states which have enacted the same or similar chemical endangerment statutes have determined that such statutes do not apply to prenatal conduct that allegedly harms a fetus”; that “[t]he state’s contention that the defendant violated this statute renders the law impermissibly vague, and therefore the rule of lenity applies”; that “[t]he legislature has previously considered amending the statute to include prenatal conduct that harms a fetus, and declined to do so”; that “the defendant has not been accorded due process because there was no notice that her conduct was illegal under this statute”; that “[t]he prosecution of pregnant women is a violation of the constitutional guarantee of Equal Protection”; and that “[pjrosecution of pregnant, allegedly drug-addicted women is against public policy for numerous moral and ethical reasons.” The State responded to that motion on October 13, 2009. In the State’s response, it agreed that on January 31, 2009, Ankrom gave birth to a son and that medical records showed that Ankrom tested positive for cocaine immediately prior to giving birth and that the child tested positive for cocaine after birth. Based on that conduct, the State argued that prosecution of Ankrom was proper under § 26-15-3.2, Ala.Code 1975. On October 15, 2009, the trial court denied Ankrom’s motion.
On April 1, 2010, Ankrom pleaded guilty to a violation of § 26-15-3.2(a)(l), Ala. Code 1975. (R. 1-14.) At the guilty-plea hearing, before entering her plea, Ankrom reserved an issue for appellate review, in the following exchange:
“The Court: All right. Should your plea be one of guilty — and I will go over the possibilities. But should your plea be one of guilty, will, you be reserving any issues for appeal?
“[Defense counsel]: Yes, sir.
“The Court: Okay. And do you wish to specify what that issue or what those issues would be?
“[Defense counsel]: Yes, sir. On September the 25th of 2009,1 filed a motion to dismiss the indictment against Ms. Ankrom predicated upon the fact that the facts as related are going to be stipulated to the Court and they were recited in the motion to dismiss the indictment. Those facts do not assert an offense against her. The law under which she’s charged; 26-15-3.2, Code of Alabama 1975, are inapplicable to — isn’t applicable to the facts of this case.
“The Court: Okay.
“[Defense Counsel]: That’s the issue we are reserving.”

*377
Discussion

Ankrom alleges that based on the facts of this case, she cannot be convicted of violating § 26-15-S.2(a)(l), Ala.Code 1975. Her allegation presents a question of first impression for this Court. Specifically, the issue before this Court is whether a mother who ingested a controlled substance during her pregnancy, may be prosecuted under § 26-15-3.2(a)(l), Ala. Code 1975, if at birth the infant tests positive for the controlled substance. We answer that legal question in the affirmative, and we conclude that based on the facts of this case, Ankrom’s conviction was proper.
Initially, we note that in Doseck v. State, 8 So.3d 1024 (Ala.Crim.App.2008), this Court declined to review the merits of a similar issue because the issue had been improperly raised in the trial court by way of a motion to dismiss. This Court held that Rule 13.5(c)(1), Ala. R.Crim. P., does not permit dismissal of an indictment based on the insufficiency of the evidence and that no other “Rule of Criminal Procedure ... provides a mechanism for a pretrial challenge to the sufficiency of the evidence.” Doseck, 8 So.3d at 1025.
In the present case, Ankrom’s attorney referenced the indictment when reserving the issue for review and styled the pleading as a “Motion to Dismiss Indictment.” However, the motion was obviously mislabeled, because it did not challenge the validity of the indictment. Rather, Ankrom’s motion and argument forthrightly raised the issue whether her conduct, as a matter of law, constituted a violation of § 26-15-3.2, Ala.Code 1975, the offense charged in the indictment. The trial court was clearly on notice of this legal issue, interpreted the language of the statute to encompass Ankrom’s conduct, and accepted Ankrom’s reservation of the issue for appellate review. The State did not object to the reservation of this issue.
Procedurally, Doseck appears to be nearly identical to the present case[1] and, if followed, would require this Court to hold that Ankrom’s claim is not properly before this Court for review. However, upon reexamining Doseck, we now believe that this decision conflicts with established precedent from the Alabama Supreme Court, such as Ex parte Deramus, 882 So.2d 875 (Ala.2002). In Ex parte Deramus, the Alabama Supreme Court held:
“Indeed, the mere mislabeling of a motion is not fatal. King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 718 (Ala.1987). This Court has stated that it is ‘committed to the proposition that it will treat a motion (or other pleading) and its assigned grounds according to its substance.’ King Mines Resort, 518 So.2d at 718; see also Lockhart v. Phenix City Inv. Co., 488 So.2d 1353 (Ala.1986), and Sexton v. Prisock, 495 So.2d 581 (Ala.1986). Further, the Court has held that ‘[t]he substance of a motion and not its style determines what kind of motion it is.’ Evans v. Waddell, 689 So.2d 23, 26 (Ala.1997).”
882 So.2d at 875. This Court has subsequently followed the teachings of Ex parte *378 Deramus on numerous occasions in different contexts. See, e.g., Ferguson v. State, 13 So.3d 418 (Ala.Crim.App.2008) (treating motion to modify sentence as an amended Rule 32, Ala. R.Crim. P., petition for post-conviction relief); Ex parte Mitchell, 936 So.2d 1094 (Ala.Crim.App.2006) (treating petition for a writ of mandamus as a petition for a writ of habeas corpus); Ex parte Bridges, 905 So.2d 32 (Ala.Crim.App.2005) (treating petition for a writ of mandamus as a petition for a writ of prohibition); and Bulger v. State, 904 So.2d 219 (Ala.Crim.App.2004) (treating Rule 32, Ala. R.Crim. P., petition for postconviction relief as a motion to reconsider sentence under § 13A-5-9.1, Ala.Code 1975).
In his dissent in Doseck, then Judge Shaw[2] explained:
“I agree with the majority that a motion to dismiss an indictment is not the proper avenue for challenging the sufficiency of the evidence. However, the majority fails to acknowledge the well settled principal that ‘[t]he substance of a motion and not its style determines what kind of motion it is.’ Evans v. Waddell, 689 So.2d 23, 24 (Ala.1997). See also Boykin v. Law, 946 So.2d 838 (Ala.2006) (treating a motion to dismiss as a motion to set aside a void judgment under Rule 60(b), Ala. R. Civ. P.); Stabler v. City of Mobile, 844 So.2d 555 (Ala.2002) (treating motion to dismiss as a motion for summary judgment); and Ex parte S.W.T., 782 So.2d 766, 767 (Ala.2000) (treating a motion requesting ‘ “an enlargement of time in which to file a post-trial motion” ’ as a motion requesting an extension of time for an appeal pursuant to Rule 77(d), Ala. R. Civ. P.). The fact that Jeffery Richard Doseck’s pretrial motion challenging whether his actions constituted felony escape was styled as a ‘Motion to Dismiss’ is not dispositive of this appeal, as the majority concludes.
“Although Doseek’s motion was styled as a motion to dismiss, and in it Doseck requested dismissal of the indictment against him, as Doseck noted in his rebuttal to the State’s response to his motion, ‘[t]he issue is whether or not an individual who violates the conditions of work release [by not returning to his work-release facility as scheduled] can be charged with [and convicted of] a felony when that individual is at work release due to misdemeanor convictions.’ (C. 9.) Doseck admitted in his motion that he failed to return to his work-release facility at his scheduled time, i.e., he stipulated to the facts as alleged by the State. The only issue presented to the trial court was purely a question of law — whether Doseck’s undisputed actions constituted felony escape or misdemeanor escape. See, e.g., Ex parte J.C.C., 4 So.3d 1188 (Ala.2008). The trial court, in denying Doseck’s motion, effectively ruled that, as a matter of law, his actions constituted felony escape and not misdemeanor escape, and Doseck properly reserved that ruling of law for review on appeal during the guilty-plea colloquy. I would not penalize Doseck for not styling his motion properly when the pure question of law presented to this Court was properly presented to the trial court, ruled on by the trial court, and properly reserved for appellate review.”
Doseck, 8 So.3d at 1026 (Shaw, J., dissenting).
We agree with Judge Shaw’s dissent, and we now hold that, in circumstances such as those presented in this case and in Doseck — where a pure question of law as to whether an accused’s *379 actions constitute a violation of the statute he or she is charged with violating is properly presented to the trial court, ruled on by the trial court, and properly reserved for appeal during the guilty-plea colloquy — the appellant should not be penalized for raising that question of law in an improperly styled pleading, such .as in a motion to dismiss the indictment. To hold otherwise would result in legally meritless cases being sent to trial and would waste precious judicial resources. Additionally, it is important to note that the State and Ankrom presented this legal issue fully to the trial court. Further, all parties were clearly aware of the question presented to, and ruled upon, by the trial court. It would be procedural folly for our Court to now refuse to consider the merits of this issue. To the extent that this Court’s opinion in Doseck held otherwise, it is hereby overruled. Moreover, Ankrom raised this specific issue orally during the guilty-plea proceeding and thereafter reserved it for review.
Turning to the merits of the present case, § 26 — 15—3.2(a)(1), Ala.Code 1975, provides:
“(a) A responsible person commits the crime of chemical endangerment of exposing a child to an environment in which he or she does any of the following:
“(1) Knowingly, recklessly, or intentionally causes or permits a child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260. A violation under this subdivision is a Class C felony.”
Ankrom alleges that the term “child” in § 26-15-3.2, Ala.Code 1975, does not include a viable fetus. The State responds that the plain meaning of the term “child,” as used in .the statute, includes an unborn child.
“Principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.” Ex parte Pratt, 815 So.2d 532, 535 (Ala.2001). “[T]he fundamental rule [is] that criminal statutes are construed strictly against the State.” Ex parte Hyde, 778 So.2d 237, 239 n. 2 (Ala.2000). “The ‘rule of lenity requires that “ambiguous criminal statute[s] ... be construed in favor of the accused.” ’ ” Ex parte Bertram, 884 So.2d 889, 892 (Ala.2003) (quoting Castillo v. United States, 530 U.S. 120, 131, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000)).
“Although penal statutes are to be strictly construed, courts are not required to abandon common sense. United States v. Green, 446 F.2d 1169, 1173 (5th Cir.1971). Absent any indication to the contrary, the words must be given their ordinary and normal meaning. Day v. State, 378 So.2d 1156, 1158 (Ala.Cr.App.), reversed on other grounds, 378 So.2d 1159 (Ala.1979).”
Walker v. State, 428 So.2d 139, 141 (Ala.Crim.App.1982).
The legislature has stated that “[t]he public policy of the State of Alabama is to protect life, born, and unborn. This is particularly true concerning unborn life that is capable of living outside the womb.” § 26-22-l(a), Ala.Code 1975. Chapter 15 of Title 26, Ala.Code 1975, does not define the term “child.” However, Chapters 14 and 16 of Title 26, Ala.Code 1975, define a “child” as a “person” under the age of 18 years. § 26-14-1(3), Ala.Code 1975; § 26-16-2(1), Ala.Code 1975.
Also, the Alabama Supreme Court has interpreted the term “minor child” in Alabama’s wrongful-death-of-minor statute to *380 include a viable fetus that received prenatal injuries causing death before a live birth. Eich v. Town of Gulf Shores, 293 Ala. 95, 300 So.2d 354 (1974). Specifically, the Court held that “the parents of an eight and one-half month old stillborn fetus [are] entitled to maintain an action for the wrongful death of the child”; thus, the Court explicitly recognized the viable fetus as a “child.” Eich, 293 Ala. at 100, 300 So.2d at 358.
Furthermore, the dictionary definition of a word provides the meaning ordinary people would give the word. Carpet Installation & Supplies of Glenco v. Alfa Mut. Ins. Co., 628 So.2d 560, 562 (Ala.1993). According to Merriam-Webster’s Collegiate Dictionary 214 (11th ed.2003), the word “child” is defined as “an unborn or recently bom person.” The word “child” is defined in Black’s Law Dictionary 254 (8th ed.2004), as “[a] baby or fetus.”
The present case is similar to the situation in Whitner v. State, 328 S.C. 1, 492 S.E.2d 777 (1997). We find the reasoning of the South Carolina Supreme Court in that case to be persuasive.
In Whitner, a mother pleaded guilty to criminal child neglect, a violation of S.C.Code Ann. § 20-7-50 (1985), for causing her baby to be born with cocaine metabolites in its system by reason of the mother’s ingestion of crack cocaine during the third trimester of her pregnancy. On appeal, the South Carolina Supreme Court held that the mother had been properly convicted of the charge. S.C.Code Ann. § 20-7-50 (1985), provided in relevant part: “Any person having the legal custody of any child ..., who shall, without lawful excuse, refuse or neglect to provide ... the proper care and attention for such child ..., so that the life, health or comfort of such child ... is endangered or is likely to be endangered, shall be guilty of a misdemeanor and shall be punished within the discretion of the circuit court.” Whit-ner, 328 S.C. at 5, 492 S.E.2d at 779. The issue on appeal was whether that statute encompassed maternal acts that endanger or were likely to endanger the life, health, or comfort of a viable fetus. Id. The Court stated that
“[u]nder [South Carolina’s] Children’s Code, ‘child’ means a ‘person under the age of eighteen.’ S.C.Code Ann. § 20-7-30(1) (1985). The question for this Court, therefore, is whether a viable fetus is a ‘person’ for purposes of the Children’s Code.”
328 S.C. at 6, 492 S.E.2d at 779.
The South Carolina Supreme Court held that a viable fetus is a child under S.C.Code Ann. § 20-7-50 (1985), reasoning:
“South Carolina law has long recognized that viable fetuses are persons holding certain legal rights and privileges. In 1960, this Court decided Hall v. Murphy, 236 S.C. 257, 113 S.E.2d 790 (1960). That case concerned the application of South Carolina’s wrongful death statute to an infant who died four hours after her birth as a result of injuries sustained prenatally during viability. The Appellants argued that a viable fetus was not a person within the purview of the wrongful death statute, because, inter alia, a fetus is thought to have no separate being apart from the mother.
“We found such a reason for exclusion from recovery ‘unsound, illogical and unjust,’ and concluded there was ‘no medical or other basis’ for the ‘assumed identity1 of mother and viable unborn child. Id. at 262,113 S.E.2d at 793. In light of that conclusion, this Court unanimously held: ‘We have no difficulty in concluding that a fetus having reached that period of prenatal maturity where it is capable of independent life apart from *381 its mother is a person.’ Id. at 263, 113 S.E.2d at 793 (emphasis added).
“Four years later, in Fowler v. Woodward, 244 S.C. 608, 138 S.E.2d 42 (1964), we interpreted Hall as supporting a finding that a viable fetus injured while still in the womb need not be born alive for another to maintain an action for the wrongful death of the fetus.
“ ‘Since a viable child is a person before separation from the body of its mother and since prenatal injuries tor-tiously inflicted on such a child are actionable, it is apparent that the complaint alleges such an “act, neglect or default” by the defendant, to the injury of the child....
“ ‘Once the concept of the unborn, viable child as a person is accepted, we have no difficulty in holding that a cause of action for tortious injury to such a child arises immediately upon the infliction of the injury.’
“Id. at 613, 138 S.E.2d at 44 (emphasis added). Fowler makes particularly clear that Hall rested on the concept of the viable fetus as a person vested with legal rights.
“More recently, we held the word ‘person’ as used in a criminal statute includes viable fetuses. State v. Horne, 282 S.C. 444, 319 S.E.2d 703 (1984), concerned South Carolina’s murder statute, S.C.Code Ann. § 16-3-10 (1976). The defendant in that case stabbed his wife, who was nine months’ pregnant, in the neck, arms, and abdomen. Although doctors performed an emergency caesarean section to deliver the child, the child died while still in the womb. The defendant was convicted of voluntary manslaughter and appealed his conviction on the ground South Carolina did not recognize the crime of feticide.
“This Court disagreed. In a unanimous decision, we held it would be ‘grossly inconsistent ... to construe a viable fetus as a “person” for the purposes of imposing civil liability while refusing to give it a similar classification in the criminal context.’ Id. at 447, 319 S.E.2d at 704 (citing Fowler v. Woodward, supra). Accordingly, the Court recognized the crime of feticide with respect to viable fetuses.
“Similarly, we do not see any rational basis for finding a viable fetus is not a ‘person’ in the present context. Indeed, it would be absurd to recognize the viable fetus as a person for purposes of homicide laws and wrongful death statutes but not for purposes of statutes proscribing child abuse. Our holding in Hall that a viable fetus is a person rested primarily on the plain meaning of the word ‘person’ in light of existing medical knowledge concerning fetal development. We do not believe that the plain and ordinary meaning of the word ‘person’ has changed in any way that would now deny viable fetuses status as persons.
“The policies enunciated in the Children’s Code also support our plain meaning reading of ‘person.’ S.C.Code Ann. § 20-7-20(C) (1985), which describes South Carolina’s policy concerning children, expressly states: ‘It shall be the policy of this State to concentrate on the prevention of children’s problems as the most important strategy which can be planned and implemented on behalf of children and their families.’ (emphasis added). The abuse or neglect of a child at any time during childhood can exact a profound toll on the child herself as well as on society as a whole. However, the consequences of abuse or neglect which takes place after birth often pale in comparison to those resulting from abuse suffered by the viable fetus *382 before birth. This policy of prevention supports a reading of the word ‘person’ to include viable fetuses. Furthermore, the scope of the Children’s Code is quite broad. It applies ‘to all children who have need of services.’ S.C.Code Ann. § 20-7-20(B) (1985) (emphasis added). When coupled with the comprehensive remedial purposes of the Code, this language supports the inference that the legislature intended to include viable fetuses within the scope of the Code’s protection.”
Whüner, 328 S.C. at 6-8, 492 S.E.2d at 779-81.
Likewise, in the present case, we do not see any reason to hold that a viable fetus is not included in the term “child,” as that term is used in § 26-15-3.2, Ala.Code 1975. Not only have the courts of this State interpreted the term “child” to include a viable fetus in other contexts, the dictionary definition of the term “child” explicitly includes an unborn person or a fetus. In everyday usage, there is nothing extraordinary about using the term “child” to include a viable fetus. For example, it is not uncommon for someone to state that a mother is pregnant with her first “child.” Unless the legislature specifically states otherwise, the term “child” is simply a more general term that encompasses the more specific term “viable fetus.” If the legislature desires to proscribe conduct against only a “viable fetus,” it is necessary to use that specific term. However, if the legislature desires to proscribe conduct against a viable fetus and all other persons under a certain age, the term “child” is sufficient to convey that meaning. In fact, proscribing conduct against a “child” and a “viable fetus” would be redundant.
The term “child” in § 26-15-3.2, Ala. Code 1975, is unambiguous; thus, this Court must interpret the plain language of the statute to mean exactly what it says and not engage in judicial construction of the language in the statute. Also, because the statute is unambiguous, the rule of lenity does not apply. We do not see any rational basis for concluding that the' plain and ordinary meaning of the term “child” does not incluue a viable fetus.
Ankrom advances three main arguments against interpreting the term “child” in § 26-15-3.2, Ala.Code 1975, to include a viable fetus: (1) The legislature has specifically included the term “fetus” or “unborn child” in other statutes when the legislature’s intent was for the statute to apply to a fetus; (2) most courts from other jurisdictions have held that mothers could not be criminally prosecuted for prenatal substance abuse on the statutory theories of child abuse/endangerment or drug distribution; and (3) the legislature has declined to amend § 26-15-3.2, Ala.Code 1975, to explicitly include an unborn child in the definition of the term “child.” We will address each argument in turn.
Contrary to Ankrom’s argument, the fact that the legislature has included the term “fetus” or “unborn child” in other statutes does not mean that the term “child” in § 26-15-3.2, Ala.Code 1975, does not include a viable fetus. Ankrom specifically points to § 26-23-3, Ala.Code 1975, as an example to support her argument. Section 26-23-3, Ala.Code 1975, provides: “Any physician who knowingly performs a partial-birth abortion within this state and thereby kills a human fetus shall be guilty of a Class C felony and upon conviction thereof shall be punished as prescribed by law.” Ankrom states that “[tjhere is no doubt in the plain meaning of that statute of which class it is designed to protect: human fetuses.” Ankrom’s brief, at 20. Ankrom then reasons that “[i]f the legislature had intended for § 26-15-3.2(a) to apply to a fetus, then the legislature would have specifically included that language as *383 it has in other statutes.” Id. However, the flaw in Ankrom’s reasoning is that she misses the distinction between the use of the more specific term “human fetus” and the more general term “child.” As stated earlier, the general term “child” encompasses the more specific term “fetus.” Statutes such as § 26-23-3 can only apply to a fetus or unborn child because it is impossible to perform an abortion after a live birth has been completed, so using the more general term “child” in such a statute would be nonsensical. On the other hand, statutes such as § 26-15-3.2 may proscribe conduct against born and unborn children; thus, the more general term “child” is necessary. Therefore, Ankrom’s first argument is without merit.
Next, we acknowledge the many decisions from appellate courts in other states holding that a mother cannot be criminally prosecuted for prenatal substance abuse under those states’ child abuse/endangerment or drug-distribution statutes. See, e.g., Reinesto v. Superior Court, 182 Ariz. 190, 894 P.2d 733 (Ct.App.1995); Johnson v. State, 602 So.2d 1288 (Fla.1992); Commonwealth v. Welch, 864 S.W.2d 280 (Ky.1993); State v. Gray, 62 Ohio St.3d 514, 584 N.E.2d 710 (1992); Reyes v. Superior Court, 75 Cal.App.3d 214, 141 Cal.Rptr. 912 (1977); State v. Gethers, 585 So.2d 1140 (Fla.Dist.Ct.App.1991); State v. Luster, 204 Ga.App. 156, 419 S.E.2d 32 (1992); People v. Hardy, 188 Mich.App. 305, 469 N.W.2d 50, app. denied, 437 Mich. 1046, 471 N.W.2d 619 (1991); Sheriff, Washoe County, Nev. v. Encoe, 110 Nev. 1317, 885 P.2d 596 (1994); Collins v. State, 890 S.W.2d 893 (Tex.App.1994); State v. Martinez, 139 N.M. 741, 137 P.3d 1195 (N.M.Ct.App.2006); State v. Dunn, 82 Wash.App. 122, 916 P.2d 952 (1996)’; State v. Wade, 232 S.W.3d 663 (Mo.Ct.App.2007); State v. Geiser, 763 N.W.2d 469 (N.D.2009). However, we find that those cases are either distinguishable from the present case or unpersuasive.
Some of the cases from other jurisdictions involved prosecutions under statutes forbidding delivery of a controlled substance and, unlike the present case, depended on statutory construction of the term “deliver.” See, e.g., Johnson, supra; Hardy, supra; Luster, supra. In other cases, the courts noted that their states’ homicide statutes did not apply to a fetus, unlike Alabama’s homicide statute, which does apply to unborn children. § 13A-6-1(a)(3), Ala.Code 1975. See, e.g., Reinesto, 182 Ariz. at 192, 894 P.2d at 735; Reyes, 75 Cal.App.3d at 217, 141 Cal.Rptr. at 913; Welch, 864 S.W.2d at 281.
In Collins, the Texas Court of Appeals held that, divergent from Alabama, “the [Texas] Penal Code does not proscribe any conduct with respect to a fetus, and the Legislature, by its definitions of ‘child,’ ‘person,’ and ‘individual,’ has specifically limited the application of our penal laws to conduct committed against a human being who has been born and is alive.” Collins, 890 S.W.2d at 897-98. Similarly, in Dunn, the Washington Court of Appeals held that “[n]o Washington criminal case has ever included ‘unborn child’ or fetus in its definition of person.” Dunn, 82 Wash.App. at 128, 916 P.2d at 955.
In Gray, unlike the present case, the mother was prosecuted under a statute that stated, in relevant part: “No person, who is the parent ... of a child under eighteen years of age ... shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support....” Gray, 62 Ohio St.3d at 515, 584 N.E.2d at 711. Noting that criminal statutes must be strictly construed, the Ohio Supreme Court interpreted that statute by defining the terms “parent” and “child” to apply only to the relationship between mothers and fathers *384 and their born infants. 62 Ohio St.3d at 515-18, 584 N.E.2d at 711-13. The Ohio Supreme Court noted that “[t]he word parent comes from the Latin parere, meaning to give birth.” 62 Ohio St.3d at 516, 584 N.E.2d at 711.
Other courts have worried about the implications of holding a mother criminally liable under a child-endangerment statute for conduct harmful to her fetus. Specifically, other courts have worried that holding a mother liable under such statutes would open the proverbial floodgates to prosecution of pregnant women who ingest legal toxins, such as alcohol or nicotine, or engage in any behavior that could conceivably injure the fetus. See, e.g., Encoe, 110 Nev. at 1319, 885 P.2d at 598; Welch, 864 S.W.2d at 283; Wade, 232 S.W.3d at 665-66. In Wade, the Missouri Court of Appeals stated that the logic of allowing prosecutions to protect the interest of the fetus “would be extended to cases involving smoking, alcohol ingestion, the failure to wear seatbelts, and any other conduct that might cause harm to a mother’s unborn child. It is a difficult line to draw and, as such, our legislature has chosen to handle the problems of pregnant mothers through social service programs instead of the court system.” Wade, 232 S.W.3d at 666. However, in the present case, we need not worry about such unlimited extensions because we are not dealing with a general endangerment statute. Section 26-15-3.2(a)(1), Ala.Code 1975, the only statute we are asked to construe, concerns only conduct involving controlled substances or drug paraphernalia. It does not concern conduct involving smoking, alcohol ingestion, failure to wear seatbelts, or any other potentially harmful conduct that does not involve controlled substances.
Other courts have examined policy issues, legislative history, or other extrinsic materials to reach their conclusions that a mother cannot be criminally prosecuted for prenatal substance abuse under those states’ child-abuse/endangerment statutes. See, e.g., Gethers, supra; Martinez, supra; Geiser, supra. However, we are not at liberty to engage in such a review because we hold that § 26-15-3.2(a)(l), Ala.Code 1975, is unambiguous on its face. See Pinigis v. Regions Bank, 977 So.2d 446, 451 (Ala.2007) (holding that “courts may examine extrinsic materials, including legislative history, to determine [legislative] intent” only “[i]f the statutory language is ambiguous”).
Again, we find the cases from other states holding that a mother cannot be criminally prosecuted for prenatal substance abuse under those states’ child-abuse/endangerment or drug-distribution statutes to be distinguishable from the present case. To the extent that they are not distinguishable, we find that their reasoning is unpersuasive.
Ankrom’s final argument against interpreting the term “child” in § 26-15-3.2, Ala.Code 1975, to include a viable fetus alleges that we should not interpret the term “child” to include a viable fetus because the legislature recently attempted to amend § 26-15-3.2, Ala. Code 1975, to explicitly state that the term “child” includes a child in útero at any stage of development, but the amendment failed. However, “ ‘failed legislative proposals are “a particularly dangerous ground on which to rest an interpretation of a prior statute.Baney v. State, 42 So.3d 170, 174 (Ala.Crim.App.2009), quoting United States v. Craft, 535 U.S. 274, 287, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002), quoting in turn Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 650, 110 S.Ct. 2668, 110 L.Ed.2d 579 (1990). “ ‘[Legislative] inaction lacks persuasive significance because several equally tenable inferences may be drawn from *385 such inaction, including the inference that the existing legislation already incorporated the offered change.’ ” Craft, 535 U.S. at 287, quoting Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). In the present case, we do not need to speculate as to why the proposed amendment failed. Again, we hold that § 26-15-3.2, Ala.Code 1975, is unambiguous on its face; thus, we must construe the statute to mean exactly what it says. See Pinigis, supra.
Finally, Ankrom argues that § 26-15-3.2, Ala.Code 1975, as applied in the present case, is void for vagueness because, she says, the statute did not give her adequate notice that her conduct was proscribed. See Vaughn v. State, 880 So.2d 1178, 1195 (Ala.Crim.App.2003) (holding that “the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement,” but “[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision” because “[m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties”). Specifically, Ankrom alleges that “[t]he plain language of the statute does not give notice that its criminal sanctions apply to fetuses exposed to controlled substances, and for that reason, Ms. Ankrom is being deprived of her due process right to fair notice of what conduct is impermissible.” Ankrom’s brief, at 27. However, as we held above, the plain meaning of the term “child,” as found in § 26-15-3.2, Ala. Code 1975, includes a viable fetus. Therefore, Ankrom had adequate notice that her conduct was proscribed; thus, her constitutional argument is without merit.

Conclusion

Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
KELLUM and JOINER, JJ., concur.
WELCH, P.J., and WINDOM, J., concur in the result and dissent in part.

. We note that Doseck is based entirely upon three prior decisions: State v. Foster, 935 So.2d 1216 (Ala.Crim.App.2005); State v. Edwards, 590 So.2d 379 (Ala.Crim.App.1991); and State v. McClain, 911 So.2d 54 (Ala.Crim.App.2005). Those three prior decisions are easily distinguishable from the present case, because in all of them: 1) there was no pure question of law for the court to decide; 2) there was no stipulation of facts by the State and the defendant; 3) the State did not consent to a ruling by the court on the issue presented; and 4) it appears that the State desired to present its evidence at trial. Foster, 935 So.2d at 1216; Edwards, 590 So.2d at 380; McClain, 911 So.2d at 55-56.

. Judge Shaw is now an Associate Justice on the Alabama Supreme Court.