MONROE, Judge.
Tuscaloosa County and its license inspector, E.E. Tinsley Jr., appeal from a judgment entered on a jury verdict in favor of Jeannie Leak Teaster[1] in a malicious prosecution case. The jury awarded Leak $20,000 in compensatory damages.
The record indicates the following. Leak operated a hair salon in Tuscaloosa from November 1989 through November 1992. In August or September 1992, Leak received a notice from the Tuscaloosa County license commissioner advising her that her business license, like all business licenses in the county, had to be renewed by October 1, 1992, and that it would be delinquent if it was not renewed by November 1, 1992. The notice said, “Destroy this form if no longer applicable.”
Leak had decided to close her salon when her lease expired at the end of November. Leak testified that when she received the notice, she called the license commissioner’s office and spoke to someone about her 1992-93 license. Leak said she explained that she would not be operating her business after November 1992, and asked whether she had to renew her license. Leak testified that the woman in the commissioner’s office with whom she spoke told her that she would not need to renew the license, that she would “take care of it,” and that she would “delete” the business from the computer.
Leak’s salon closed at the end of November, and shortly afterwards Leak moved to Florida. Nearly a year later, in October 1993, Leak returned to Tuscaloosa and began working at another hair salon. She was not the operator of that salon. On December 30, 1993, Tuscaloosa County sheriffs deputies came to her house with a warrant for her arrest. Leak was not home at the time, but she turned herself in to the sheriffs office later that day. She was charged with conducting business without a license, booked, and had to pay an appearance bond before she was released.
*600 Upon her release, Leak went to the license commissioner’s office and told one of the employees there, Ms. Williamson, that she had been arrested for conducting business without a license. Leak said that Williamson told her that her business had been designated “deleted,” and let her see the computer screen, which show that her business was designated “deleted.” Leak then talked with Tinsley, the license inspector. She explained her situation to him, including the conversation she had had with someone in the commissioner’s office a year earlier in which she was assured that she did not have to renew her license for 1992-93. Leak said that Tins-ley told her he would take care of it, and the charges against her were subsequently dismissed.
Tinsley testified that as license inspector, his job was to investigate and prosecute people who are conducting business without a license. He testified as to the procedure he had developed toward that end. Each year, he said, he received a list of names of people who did not renew their licenses from the previous year. Tinsley said he mailed letters to those people and attempted to talk to them by telephone. He said if he did not get a response, he assumed those people are conducting business without a license, and that assumption serves as his probable cause to get warrants for their arrest. That is what happened in Leak’s case.
The county and Tinsley contend that the trial court erred in denying their motion for a judgment as a matter of law because, they say, uncontroverted evidence shows that Leak was actually guilty of the crime with which she was charged. Specifically, they say, the evidence shows that Leak operated her salon in November 1992 without a valid business license; therefore, they argue, she was “guilty” of conducting business without a license and there can be no malicious prosecution.
We note that the county and Tinsley cite only C.J.S. and Am.Jur.2d for general propositions of law in support of their argument. They concede there are no Alabama cases on point. Furthermore, their argument fails in light of the facts presented. Tinsley himself testified that when the warrant was issued in April 1993, and when Leak was arrested in December 1993, he did not know that she had operated her salon in November 1992. Moreover, the undisputed evidence is that the license commissioner’s office assured Leak that she did not have to renew her license for 1992-93. The jury apparently decided that, under these facts, Leak was in fact not “guilty” of the offense with which she was charged. We cannot agree that Leak is “guilty” of conducting business without a license when she had been assured by the licensing authority that a license was not needed.
The county and Tinsley also argue that the court erred in denying their motion for a judgment as a matter of law because, they say, Tinsley had probable cause to have the warrant issued against Leak and he was not acting with malice in seeking that warrant.
The elements for a malicious prosecution action are: (1) a prior prosecution of an action by the present defendant against the present plaintiff; (2) the absence of probable cause for that prior prosecution; (3) malice in that prior prosecution; (4) a favorable outcome for the present plaintiff in that prior action; and (5) damage resulting from that prosecution. Eubanks v. Hall, 628 So.2d 773 (Ala.Civ.App.1993). Probable cause has been defined as follows:
“[a] reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged. The question is not whether the [malicious prosecution] plaintiff was guilty of the thing charged, but whether the [malicious prosecution] defendant acted in good faith on the appearance of things.”
*601 Eidson v. Olin Corp., 527 So.2d 1283, 1285 (Ala.1988). (Brackets and emphasis in original; internal citations omitted.) To determine whether Tinsley had probable cause to have an arrest warrant issued for Leak, we must look at the circumstances as they appeared to him at the time the warrant was issued. Id.
According to the record, the warrant for Leak’s arrest was issued in April 1993, five months after she closed her business. Tinsley said that when the warrant was issued, he did not know that Leak had conducted business during November 1992; therefore, that conduct cannot be the basis for issuing the warrant. Tinsley also said that he did not conduct an investigation into whether Leak was still conducting business. Instead, he said, because she did not respond to his letters, which she says she did not receive, he assumed she was still conducting business. He made this assumption despite instructions printed on the renewal notice to “[d]estroy this form if no longer applicable.” Furthermore, the files in the license commissioner’s computer system had a notation next to Leak’s name indicating that her business was “deleted.” This gives rise to the inference that Tinsley did not check his own office’s computer regarding the status of Leak’s business before seeking a warrant for her arrest. After Leak was arrested, Tinsley himself said that the. warrant for her arrest “should have been placed in the inactive files.”
The evidence tends to show that Tinsley had no probable cause to believe that Leak was conducting business without a license when the warrant was issued for her arrest, or when she was arrested. In fact, the evidence tends to show that even a cursory investigation of his office’s own computer files would have shown that Leak was no longer conducting business in Tuscaloosa County. The failure to respond to Tinsley’s letter in itself is insufficient to lead a cautious man to believe that Leak was guilty of conducting business without a license.
Based on the evidence, we cannot say that as a matter of law, Tinsley had probable cause to issue the warrant. Therefore, the trial court did not err in denying the defendants’ motion for a judgment as a matter of law.
The county and Tinsley also argue that the trial court erred in denying their motion for a judgment as a matter of law because, they say, there is no cause of action for “negligent unlawful arrest” or “negligent prosecution,” both of which, they claim, were alleged in Leak’s complaint.
In her brief on appeal, Leak says that the county and Tinsley misconstrued the complaint. The record shows that Leak’s attorney made clear at trial that what the appellants say is a claim for “negligent unlawful arrest” was nothing more than a simple negligence and/or wantonness count and that that phrase was merely descriptive of what happened. Leak also argues that she did not have a claim for “negligent prosecution.” Instead, she says, she was asserting that Tinsley was negligent or wanton in the performance of his official duties.
The trial court dismissed several of Leak’s claims, and the case went to the jury on the claims of malicious prosecution, negligence, and wantonness; there was no mention to the jury of “claims” of “negligent unlawful arrest” (which the defendants claim was akin to a claim alleging false arrest or false imprisonment), or “negligent prosecution.” The jury was not instructed on elements of false arrest or imprisonment. Therefore, even if we were to determine that these claims weré included in Leak’s complaint, those “claims” were not before the jury. We cannot say that the trial court erred in denying the defendants’ motion for a judgment as a matter of law on the claims of malicious prosecution and negligence or wantonness — the only claims that went to the jury.
*602 The county and Tinsley also argue that as license inspector, Tinsley is an officer or employee of the state and, therefore, that he is entitled to sovereign immunity. They also contend that he is entitled to qualified immunity because, they say, as license inspector he was performing a discretionary function. In an essentially identical case in which Tinsley was sued for malicious prosecution in his role as license inspector, this court held that he was not entitled to sovereign immunity or to “discretionary function” immunity. Tuscaloosa County v. Henderson, 699 So.2d 1274 (Ala.Civ.App.1997). The Alabama Supreme Court denied certiorari. Id.
In Henderson, we held that Tinsley was a county employee, not a state employee, and that, therefore, he was not entitled to sovereign immunity. See Henderson, supra, and the cases cited therein. In addition, the procedure Tinsley used in Henderson for deciding that he had probable cause to have a warrant' issued was identical to the procedure used in this case. We held that Tinsley was not entitled to “discretionary function” immunity, reasoning as follows:
“[T]he evidence presented revealed that Tinsley received a list of persons who had failed to renew their business licenses. If he was unable to reach these persons, he had warrants issued for their arrests. This process involved no discretion and no judgment on his part. Thus, the trial court’s ruling that Tinsley performed ministerial functions was correct.”
Henderson, 699 So.2d at 1277. Based on our holding in Henderson, Tinsley was not entitled to qualified or “discretionary function” immunity.
The judgment is affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., and THOMPSON, J., concur in result.
CRAWLEY, J., dissents.

. Jeannie Leak has married since the complaint in this case was filed; her married name is Jeanie Leak Teaster. For continuity, we shall refer to her as Ms. Leak.