SEE, Justice.
Jeannie Leak[1] sued E.E. “Billy” Tins-ley, individually and in his official capacity as the license inspector for Tuscaloosa County, and the Tuscaloosa County Commission, asserting claims of malicious prosecution, negligence, and wantonness stemming from her arrest for operating a business without a business license. The jury returned a general verdict awarding Leak $20,000 in compensatory damages. Because we hold that Leak’s actual guilt of operating a business without a business license is an absolute bar to her cause of action, we reverse and remand.
I.
Leak owned and operated a hair salon in Tuscaloosa from November 1989 through November 1992. In August or September 1992, she received a letter from the Tuscaloosa County license commissioner reminding her to renew her business license. The letter stated that her business license would expire on September 30, 1992, and that it should be renewed by October 1. Leak telephoned the license commissioner’s office and explained that she was closing the hair salon by the end of November. According to Leak, a woman in the license commissioner’s office told her that she did not need to renew her business license. Leak said that the woman told her that she would “take care of it” and that she would “delete” Leak’s business from the computer. Relying on these representations, Leak said, she continued to operate her salon after her business license had expired. Leak closed her salon at the end of November and moved to Florida.
Tinsley, as the license inspector for Tuscaloosa County, is responsible for investi *604 gating and prosecuting people who conduct business in Tuscaloosa County without a license to do so. On November 1, 1992, Tinsley received a list containing the names of people, including Leak, who had not renewed their licenses from the previous year. Pursuant to the enforcement procedure he had established, Tinsley attempted by telephone to contact Leak about her failure to renew her business license. When his attempt was unsuccessful, he mailed three different letters to Leak. Each letter stated that the failure to purchase a business license might result in a criminal prosecution. Although none of these letters was returned by the Postal Service, Leak asserts that she never received any of them. Tinsley eventually sought and obtained a warrant for Leak’s arrest.
In October 1993, Leak returned to Tuscaloosa and began working at another hair salon.[2] On December 30, Tuscaloosa County sheriffs deputies came to her home with a warrant for her arrest. She was not home at the time, but she turned herself in to the sheriffs office later that day. She was charged with conducting a business without a business license, a violation of Ala.Code 1975, § 40-12-9. She was booked and was required to post an appearance bond.
After leaving the sheriffs office, Leak went to the license commissioner’s office. Leak explained her situation to one of the employees at the office. The employee told her the business had been “deleted,” and she let Leak see the “deleted” designation on the computer screen. Leak then spoke with Tinsley about her situation and told him about the conversation she had had with a woman in the office a year earlier. Tinsley told Leak that he would take care of the problem. On January 6, 1994, Tinsley requested a dismissal of the case, and it was dismissed the following day.
In May 1995, Leak sued Tinsley and the Tuscaloosa County Commission, alleging that she had been arrested without probable cause and that the arrest was done maliciously and without reasonable justification. Leak also alleged that Tinsley and the Tuscaloosa County Commission were liable under theories of defamation, abuse of process, negligent or wanton investigation, and negligent performance and/or administration of the license inspector’s duties. The trial court dismissed the defamation and abuse-of-process claims, and the ease went to trial on the malicious-prosecution, negligence, and wantonness claims. The jury returned a general verdict awarding Leak $20,000 in compensatory damages. The trial court entered a judgment in that amount, and the Court of Civil Appeals affirmed that judgment. Tuscaloosa County v. Teaster, 770 So.2d 598 (Ala.Civ.App.1999).
II.
Tinsley and the Tuscaloosa County Commission argue that because Leak was actually guilty of operating a business without a license, she cannot recover on her malicious-prosecution claim. See Shannon v. Sims, 146 Ala. 673, 677, 40 So. 574, 575 (1906) (“The defendant had the right, however, to show that plaintiff had committed the offense which the affidavit attempted to charge in mitigation of damages under the false imprisonment count and as a bar to recovery to the counts for malicious prosecution.”). Although the Court of Civil Appeals recognized this long-standing rule, it concluded that the jury could not have found that Leak had not been guilty of operating a business without a license, on the basis that she had been told by an employee of the license commissioner’s office that she did not need to renew her license. See Teaster, 770 So.2d at 600.
It is undisputed that Leak operated a business without a valid business license *605 during October and November 1992. She argues, however, that Tinsley and the Tuscaloosa County Commission should be es-topped from raising her guilt as a defense because she had been told that she did not need to renew her license to operate for those two months. Mistake of law, however, is not a defense to a crime. See Ala. Code 1975, § 13A-2-6(b). Section 13A-2-6(b) provides:
“A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless his mistaken belief is founded upon an official statement of the law contained in a statute or the latest judicial decision of the highest state or federal court which has decided on the matter.”
As the “Commentary” to this subsection explains, subsection (b) does not provide a defense to one who relies on an administrative ruling, an attorney general’s opinion, or an interpretation of law by another government official. Thus, Leak’s reliance on a statement made by an employee at the license commissioner’s office does not relieve her of criminal liability. Even if a jury would refuse to convict Leak under the facts of this case, her actual guilt of the offense bars her malicious-prosecution claim. See Shannon, 146 Ala. at 677, 40 So. 574 at 575. Accord Horne v. Bridwell, 193 Va. 381, 389, 68 S.E.2d 535, 540 (1952) (“Proof of the actual guilt of the person accused is a complete defense even though the prosecution may have been dismissed or the defendant acquitted.”).
Tinsley and the Tuscaloosa County Commission also argue that Leak’s inability to succeed on her malicious-prosecution claim should also bar her from recovering on her negligence and wantonness claims. We agree. “The policy disfavoring malicious prosecution claims ... also disfavor[s] bringing claims arising out of facts within the ambit of malicious prosecution but couched in other terms, especially general allegations of negligence, willfulness, or wantonness.”[3] Cutts v. American United Life Ins. Co., 505 So.2d 1211, 1214 (Ala.1987).
III.
The trial court erred in not entering a judgment as a matter of law in favor of Tinsley and the Tuscaloosa County Commission. Accordingly, we reverse the judgment of the Court of Civil Appeals and remand for that court to remand the case to the trial court with instructions to enter a judgment in favor of Tinsley and the Tuscaloosa County Commission.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, HOUSTON, COOK, LYONS, BROWN, and JOHNSTONE, JJ., concur.

. Jeannie Leak has married since she filed her complaint and now has the name Jeannie Leak Teaster; however, because she referred to herself by the name Jeannie Leak in the materials she filed with this Court, we will refer to her by that name for purposes of this opinion.

. Leak did not own or operate this salon.

. Tinsley and the Tuscaloosa County Commission also argue that Tinsley is shielded from liability by both '‘sovereign” and ''discretionary-function” immunity. Our conclusion, however, makes any discussion of that argument unnecessary.