PARKER, Justice.
Sarah Janie Hicks petitioned this Court for a writ of certiorari to review the Court of Criminal Appeals’ judgment affirming her conviction, following a guilty plea, for chemical endangerment of a child for exposing her unborn child to a controlled substance, in violation of Alabama’s chemical-endangerment statute, § 26-15-3.2(a)(1), Ala.Code 1975. We granted her petition, and we now affirm the judgment of the Court of Criminal Appeals and hold that the use of the word “child” in the chemical-endangerment statute includes all children, born and unborn, and furthers Alabama’s policy of protecting life from the earliest stages of development.

I. Facts and Procedural History

The Court of Criminal Appeals set forth the relevant facts and procedural history in its unpublished memorandum in Hicks v. State, 153 So.3d 52 (Ala.Crim.App.2011), as follows:
“Hicks appeals from her conviction, following a guilty plea, for chemical endangerment of a child, a violation of § 26-15-3.2(a)(l), Ala.Code 1975. Hicks was sentenced to three years’ imprisonment; the sentence was suspended and Hicks was placed on supervised probation for one year. Court costs and fees were assessed.
“Section 26-15-3.2, Ala.Code 1975, provides:
“ ‘(a) A responsible person commits the crime of chemical endangerment of exposing a child to an environment *55 in which he or she does any of the following:
“‘(1) Knowingly, recklessly, or intentionally causes or permits a child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260.’
“The indictment charged:
‘“The Grand Jury of said County charges that before the finding of this indictment that, Sarah Janie Hicks; whose name is to the Grand Jury otherwise unknown, did knowingly, recklessly, or intentionally cause or permit a child, to-wit; [J.D.], a better description of which is to the Grand Jury otherwise unknown, to be exposed to,, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 18A-12-260 of the Code of Alabama, 1975, to-wit: Cocaine, in violation of Section 26 — [15—3.2](a)(l), Against the Peace and Dignity of the State of Alabama.’
“Concisely, the State charged that Hicks ingested cocaine while pregnant with J.D. and that that resulted in J.D. testing positive for the presence of cocaine in his body at the time of his birth. Documents in the record suggest that, since his birth, J.D. is ‘doing fine.’ Hicks filed a pretrial motion to dismiss the indictment in which she asserted: 1) that the plain language of § 26-15-3.2(a)(1) reflects that the legislature intended for the statute to apply to a child and not to a fetus, i.e., an unborn child and that, therefore, her conduct in ingesting cocaine while pregnant did not constitute the offense of the chemical endangerment of a child; 2) that Hicks was denied due process because, although the statute as written is not vague, the statute, as applied to Hicks’s conduct, is impermissibly vague because the statute provides no notice that it encompasses exposing a fetus, i.e., an unborn child, to a controlled substance; 3) that the State has violated the doctrine of separation of powers because it is the duty of the legislature and not a district attorney to proscribe criminal offenses, and the legislature recently declined to criminalize prenatal conduct that harms a fetus, i.e., an unborn child; and 4) that Hicks is being denied equal protection because the State is seeking to punish, as a class, women who abuse drugs while pregnant, whereas, a man may father a child while abusing drugs and not be prosecuted under the statute.
“On November 19, 2009, a hearing was conducted at which Hicks and the State presented arguments addressing the assertions in Hicks’s motion to dismiss. At the conclusion of arguments, the trial court asserted that the motion to dismiss seemed ‘based on factual arguments’ and questioned whether the assertions in the motion would ‘be more applicable for a motion for a judgment of acquittal at the end of the State’s case.’ The trial court asked the parties to explain ‘[h]ow does this Court reach out and dismiss an indictment that is a valid indictment?’ Hicks argued that ‘it’s a question of law, not a question of fact whether a child includes the term “fetus’” and ‘there’s no crime that’s been committed based on the set of circumstances alleged in that indictment.’ The State responded that, as the trial court stated, ‘if the indictment is valid, it then becomes ... a question of fact; and, therefore, it cannot be dismissed on a motion to dismiss the indictment when the indictment is correct on its face and is a valid indictment.’ After the hearing, on November 30, 2009, the trial *56 court entered a written order denying the motion to dismiss stating: ‘Upon consideration of the pleadings and arguments presented at hearing, it is ordered that the Motion to Dismiss the Indictment filed by [Hicks] is denied.’
“On December 7, 2009, Hicks filed a Motion to Declare the Statute Unconstitutional that presented arguments similar to those in her motion to dismiss. It does not appear that the trial court ruled on this motion.
“On January 11, 2010, before entering a guilty plea, Hicks expressly reserved the right to appeal the issues presented in her motion to dismiss. Then, pursuant to a plea agreement, Hicks pleaded guilty to the chemical endangerment of a child as charged in the indictment. She was sentenced to three years’ imprisonment; the sentence was suspended, and Hicks was placed on supervised probation for one year.”
(References to the record omitted.)
The Court of Criminal Appeals, relying on its opinion in Ankrom v. State, 152 So.3d 373 (AIa.Crim.App.2011), affirmed the trial court’s judgment, stating:
“Hicks contends on appeal, as she did in the trial court, that the plain language of the statute is clear and unambiguous, and ‘the statute [ (§ 26-15-3.2(a)(l)) ] does not mention unborn children or fetuses.’ (Hicks’s brief, at p. 11.) Thus, Hicks argues, the term ‘child’ in § 26-15-3.2 should not be construed to include an unborn child or fetus. Hicks argues that the settled rules of statutory construction require this Court to construe the term ‘child’ as not including an unborn child or fetus. Specifically, she argues: (1) that the rule of lenity requires criminal statutes to be strictly construed in favor of the accused; (2) that the legislative history of the statute and the Alabama Legislature’s failure to amend § 26-15-3.2 to specifically state that the statute applies to a fetus shows that the legislature did not intend for the statute to apply to the prenatal exposure of unborn children to controlled substances; and (3) that the majority of our sister states have refused to allow women to be prosecuted criminally for conduct occurring during pregnancy. Hicks also presented constitutional challenges to § 26-15-3.2: (1) the State’s application of the statute is violative of the separation-of-powers doctrine; and (2) as applied to her, the statute is void for vagueness and violative of due process.
“Recently, in Ankrom v. State, 152 So.3d 373 (Ala.Crim.App.2011), a case involving virtually identical facts as the facts in this case, this Court held that the plain language of § 26-15-3.2 was clear and unambiguous and that the plain meaning of the term ‘child’ in § 26-15-3.2 included an unborn child or viable fetus. Ankrom v. State, 152 So.3d at 385 (‘[T]he plain meaning of the term “child,” as found in § 26-15-3.2, Ala.Code 1975, includes a viable fetus.’). This Court also noted that because the plain language of the statute was clear and no statutory construction was necessary, the rule of lenity was inapplicable, the fact that subsequent attempts to amend § 26-15-3.2 to include an unborn child within the definition of ‘child’ did not pass the legislature was irrelevant, and holdings from courts in other jurisdictions were either distinguishable from the facts in Ankrom or unpersuasive.
“Applying the holding in Ankrom to this case, Hicks’s argument that the plain meaning of the term ‘child’ in § 26-15-3.2 does not include an unborn child or fetus must fail, given that it has already been rejected by this Court. *57 Moreover, because this Court found no ambiguity in the statute, Hicks’s constitutional challenges fail.
“Based on the foregoing, the judgment of the trial court is affirmed.”
On February 24, 2012, Hicks petitioned this Court for a writ of certiorari. On April 6, 2012, we granted her petition; we now affirm the judgment of the Court of Criminal Appeals.

II. Standard of Review

“We review questions of statutory construction and interpretation de novo, giving no deference to the trial court’s conclusions.” Pitts v. Gangi, 896 So.2d 433, 434 (Ala.2004) (citing Greene v. Thompson, 554 So.2d 376 (Ala.1989)).

III. Discussion

Hicks was convicted of violating § 26-15-3.2, Ala.Code 1975 (“the chemical-endangerment statute”), by causing her unborn child to be exposed to, to ingest or inhale, or to have contact with a controlled substance. The chemical-endangerment statute provides:
“(a) A responsible person commits the crime of chemical endangerment of exposing a child to an environment in which he or she does any of the following:
“(1) Knowingly, recklessly, or intentionally causes or permits a child to be exposed to, to ingest or inhale, or to have contact with a controlled substance, chemical substance, or drug paraphernalia as defined in Section 13A-12-260. A violation under this subdivision is a Class C felony.
“(2) Violates subdivision (1) and a child suffers serious physical injury by exposure to, ingestion of, inhalation of, or contact with a controlled substance, chemical substance, or drug paraphernalia. A violation under this subdivision is a Class B felony.
“(3) Violates subdivision (1) and the exposure, ingestion, inhalation, or contact results in the death of the child. A violation under this subdivision is a Class A felony.
“(b) The court shall impose punishment pursuant to this section rather than imposing punishment authorized under any other provision of law, unless another provision of law provides for a greater penalty or a longer term of imprisonment.
“(c) It is an affirmative defense to a violation of this section that the controlled substance was provided by lawful prescription for the child, and that it was administered to the child in accordance with the prescription instructions provided with the controlled substance.”
The facts of Hicks’s case are undisputed; the only issue before this Court is whether the chemical-endangerment statute applies to Hicks’s conduct. After the parties submitted their briefs in this case, this Court released its opinion in Ex parte Ankrom, 152 So.3d 397 (Ala.2013), a case involving facts virtually identical to the facts in this case, in which it addressed the same issue. In Ankrom, as wfll be discussed in greater detail below, this Court held that the plain meaning of the word “child,” as that word is used in the chemical-endangerment statute, includes an unborn child. Accordingly, for the reasons given below, we hold that chemical-endangerment statute also applies to Hicks’s conduct.
Hicks raises three main arguments on appeal. First, Hicks argues that the legislature did not intend for the word “child” in the chemical-endangerment statute to apply to an unborn child. Next, Hicks argues that applying the chemical-endangerment statute to protect unborn children *58 is bad public policy. Finally, Hicks argues that she was denied due process of law. Each of Hicks’s arguments is addressed below.

A. Legislative Intent

Hicks argues that the legislature did not intend for the word “child” in the chemical-endangerment statute to include an unborn child. First, Hicks argues that, under the rules of statutory interpretation, the word “child” in the chemical-endarigerment statute cannot include an unborn child because the word “child” is not defined in the statute. Hicks argues that the statute is, therefore, unconstitutionally ambiguous and should be declared void for vagueness.[1] Hicks’s brief, at pp. 6-7. In the alternative, Hicks argues that, if this Court does not find that the chemical-endangerment statute is impermissibly and unconstitutionally vagué, then the Court must follow the rule of lenity and construe the statute in her favor:
In Ankrom, this Court applied the rules of statutory construction to interpret the chemical-endangerment statute:
• “In [Ex parte ] Bertram, [884 So.2d 889 (Ala.2003),] this Court stated:
“ ‘ “A basic rule of review in criminal cases is that criminal statutes are to be strictly construed in favor of those persons sought to be subjected to their operation, i.e., defendants.
“‘“Penal statutes are to reach no further in meaning than their words.
“ ‘ “One who commits an act which does not come within the words of a criminal statute, according to the general and popular understanding of those words, when they are not used technically, is not to be punished thereunder, merely because the act may contravene the policy of the statute.
“ ‘ “No person is to be made subject to penal statutes by implication and all doubts concerning their interpretation are to predominate in favor of the accused.” ’
“884 So.2d at 891 (quoting Clements v. State, 370 So.2d 723, 725 (Ala.1979) (citations omitted; emphasis added in Bertram )).
“In ascertaining the legislature’s intent in enacting a statute, this Court will first attempt to assign plain meaning to the language used by the legislature. As the Court of Criminal Appeals explained in Walker v. State, 428 So.2d 139, 141 (Ala.Crim.App.1982), ‘[although penal statutes are to be strictly construed, courts are not required to abandon common sense. Absent any indication to the contrary, the words must be given their ordinary and normal meaning.’ (Citations omitted.) Similarly, this Court has held that ‘[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. If possible, the intent of the legislature should be gathered from the language of the statute itself.’ Volkswagen of America, Inc. v. Dillard, 579 So.2d 1301,1305 (Ala.1991).
“We look first for that intent in the words of the statute. As this Court stated in Ex parte Pfizer, Inc., 746 So.2d 960, 964 (Ala.1999):
“ ‘ “When the language of a statute is plain and unambiguous, as in this case, courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning— they must interpret that language to mean exactly what it says and thus *59 give effect to the apparent intent of the Legislature.” Ex parte T.B., 698 So.2d 127, 130 (Ala.1997). Justice Houston wrote the following for this Court in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270 (Ala.1998):
‘““In determining the meaning of a statute, this Court looks to the plain meaning of the words as written by the legislature. As we have said:
““““Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial' construction and the clearly expressed intent of the legislature must be given effect.”’
‘““Blue Cross & Blue Shield v. Nielsen, 714 So.2d 293, 296 (Ala.1998) (quoting IMED Corp. v. Systems Eng’g Assocs. Corp., 602 So.2d 344, 346 (Ala.1992)); see also Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n, 589 So.2d 687, 689 (Ala.1991); Coastal States Gas Transmission Co. v. Alabama Pub. Serv. Comm’n, 524 So.2d 357, 360 (Ala.1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. City of Hartselle, 460 So.2d 1219, 1223 (Ala.1984); Dumas Brothers Mfg. Co. v. Southern Guar. Ins. Co., 431 So.2d 534, 536 (Ala.1983); Town of Loxley v. Rosinton Water, Sewer & Fire Protection Auth., Inc., 376 So.2d 705, 708 (Ala.1979). It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefScient or unusual. However, it is our job to say what the law is, not to say what it should be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers. See Ex parte T.B., 698 So.2d 127, 130 (Ala.1997).” ’
“Thus, only when language in a statute is ambiguous will this Court engage in statutory construction. As we stated in Ex parte Pratt, 815 So.2d 532, 535 (Ala. 2001), ‘[principles of statutory construction instruct this Court to interpret the plain language of a statute to mean exactly what it says and to engage in judicial construction only if the language in the statute is ambiguous.’
“As the Court of Criminal Appeals explained in Ankrom [ v. State, 152 So.3d 373 (Ala.Crim.App.2011) ], the rule of construction referenced in Bertram applies only where the language of the statute in question is ambiguous; the issue in these cases is whether the plain, ordinary, and normal meaning of the word ‘child’ includes an unborn child.”
Ankrom, 152 So.3d at 409-10.
This Court concluded in Ankrom that
“the plain meaning of the word ‘child’ is broad enough to encompass all' children — born and unborn — including [the] unborn children in the cases before us. As the Court of Criminal Appeals said in Ankrom:
“ ‘Likewise, in the present case, we do not see any reason to hold that a *60 viable[2] fetus is not included in the term “child,” as that term is used in § 26-15-8.2, Ala.Code 1975. Not only have the courts of this State interpreted the term “child” to include a viable fetus in other contexts, the dictionary definition of the term “child” explicitly includes an unborn person or a fetus. In everyday usage, there is nothing extraordinary about using the term “child” to include a viable fetus. For example, it is not uncommon for someone to state that a mother is pregnant with her first “child.” Unless the legislature specifically states otherwise, the term “child” is simply a more general term that encompasses the more specific term “viable fetus.” If the legislature desires to proscribe conduct against only a “viable fetus,” it is necessary to use that specific term. However, if the legislature desires to proscribe conduct against a viable fetus and all other persons under a certain age, the term “child” is sufficient to convey that meaning. In fact, proscribing conduct against a “child” and a “viable fetus” would be redundant.
“ ‘The term “child” in § 26-15-3.2, Ala.Code 1975, is unambiguous; thus, this Court must interpret the plain language of the statute to mean exactly what it says and not engage in judicial construction of the language in the statute. Also, because the statute is unambiguous, the rule of lenity does not apply. We do not see any rational basis for concluding that the plain and ordinary meaning of the term “child” does not include a viable fetus.’
“We find this reasoning persuasive and agree with the Court of Criminal Appeals that the plain meaning of the word ‘child’ in the chemical-endangerment statute includes unborn children.”
Ankrom, 152 So.3d at 411-12. As thoroughly explained in Ankrom, the use of the word “child” in the chemical-endangerment statute is clear and unambiguous; thus, we reject Hicks’s argument that the rule of lenity should apply to our interpretation of the statute.
Next, Hicks argues that the legislature’s intended definition of the word “child” as that term is used in the chemical-endangerment statute can be discerned from the legislature’s use of the word in the surrounding chapters of the Alabama Code, which define the word “child” as “[a] person under the age of 18 years,” § 26-14-1(3), Ala.Code 1975,[3] and as “[a] person who has not yet reached his or her eighteenth birthday,” § 26-16-91(2), Ala.Code 1975.[4] Hicks argues that the placement of the chemical-endangerment statute in the title and chapter of the Alabama Code in which it was placed is meaningful and that “the legislature is presumed to know the definition of child in the preceding and subsequent chapters.” Hicks’s brief, at p. 8. Hicks also argues that the legislature’s intended definition of the word “child” in the chemical-endangerment statute is evidenced by Alabama’s partial-birth-abortion statute, § 26-23-3, Ala.Code 1975, which refers to an unborn child as “a human fetus” as opposed to “a child.” Hicks also argues that the legislature’s intent is further demonstrated in the definition section *61 of the “Woman’s Right to Know Act,” § 26-23A-1 et seq., Ala.Code 1975, which defines “unborn child” as “the offspring of any human person from conception until birth.” § 26-23A-3(10), Ala.Code 1975. Additionally, Hicks argues that the legislature’s intent to exclude unborn children from the definition of the word “child” in the chemieal-endangerment statute is evidenced by the fact that § 13A-6-l(d), Ala. Code 1975, forbids the prosecution under “Article 1 or Article 2 ... of ... any woman with respect to her unborn child,” while at the same time defining “person” as “including an unborn child in útero at any stage of development, regardless of viability.” § 13A-6-l(a)(3), Ala.Code 1975.
This Court addressed arguments similar to those raised by Hicks in Ankrom, as follows:
“A review of the statutes cited by the petitioners and of the context of the chemieal-endangerment statute provides no conclusive evidence as to how this Court should interpret the word ‘child’ as that term is used in the chemieal-endangerment statute. The statutory definitions of the word ‘child’ cited ... are not conclusive because both set a maximum age for childhood without setting a minimum age. Similarly, [the argument] that ‘the examples put forth ... show that the legislature uses the explicit term “unborn child” to refer to the unborn, rather than rely on the ... ambiguous term “child,” ’ ... fails to note that the legislature’s decision to use the more restrictive words ‘fetus’ and ‘unborn child’ was appropriate in those other statutes because those statutes applied only to protect unborn children.[6] In sum, nothing in the statutes cited ... contradicts the plain meaning of the word ‘child’ in the chemieal-endangerment statute to include an unborn child or requires this Court to interpret the word ‘child’ as excluding unborn children.
[[Image here]]
“[6]Using the word ‘fetus’ or ‘unborn child’ in place of the word ‘child’ would not have been appropriate in the chemi-eal-endangerment statute because that statute also protects children after they have been born.”
Ankrom, 152 So.3d at 414. As this Court held in Ankrom, the statutory definitions of the word “child” in other chapters of the Code do not limit “child” to only a child who has been born but simply set a maximum age at which the person is no longer regarded as a “child” under a particular statutory scheme. Also, the references to a “human fetus” or “unborn child” in the partial-birth-abortion statute and the Woman’s Right to Know Act both deal exclusively with unborn children. Thus, it would be inappropriate to use the word “child” because that would, nonsensically in that context, include children who have already been born. Because both born and unborn children can be exposed to controlled substances, we have no reason to doubt that the legislature intended for the chemieal-endangerment statute to be using the plain meaning of the word “child” and thereby protecting all children.
Hicks also argues that a majority of other jurisdictions have refused to define the word “child” as including an unborn child and that the Court of Criminal Appeals erred by following the minority view espoused by the South Carolina Supreme Court in Whitner v. State, 328 S.C. 1, 492 S.E.2d 777 (1997). This Court addressed this argument in Ankrom, as follows:
“[A]lthough, as the petitioners correctly state, a majority of jurisdictions have held that unborn children are not afford *62 ed protection from the use of a controlled substance by their mothers, they nonetheless fail to convince this Court that the decisions of those courts are persuasive and should be followed by this Court. See Planned Parenthood v. Casey, 505 U.S. 833, 846, 112 S.Ct. 2791, 120 L.Ed.2d 624 (1992) (‘[T]he State has legitimate interests from the outset of the pregnancy in protecting ... the life of the fetus that may become a child.’ (quoted with approval in Hamilton v. Scott, 97 So.3d 728, 740 (Ala.2012) (Parker, J., concurring specially, joined by Stuart, Bolin, and Wise, JJ.))).”
152 So.3d at 418. As set forth in Ankrom, the State has a legitimate interest in protecting the life of children from the earliest stages of their development and has done so by enacting the chemical-endangerment statute. The fact that other states have failed to do so does not persuade us to look beyond the plain meaning of the word “child” as that word is used in the chemical-endangerment statute.
Hicks also argues that legislative intent can be discerned by the failure of several proposed amendments' to the chemical-endangerment statute that would have specifically defined the word “child” to include unborn children. This Court addressed this argument in Ankrom, as follows:
“Interpreting a statute based on later attempts to amend that statute is problematic. As the United States Supreme Court stated in Pension Benefit Guaranty Corp. v. LTV Corp., 496 U.S. 633, 650,110 S.Ct. 2668,110 L.Ed.2d 57,9 (1990):
“ ‘[Subsequent legislative history is a “hazardous basis for inferring the intent of an earlier” Congress. It is a particularly dangerous ground on which to rest an interpretation of a prior, statute when it concerns, as it does here, a proposal that does not become law. Congressional inaction lacks “persuasive significance” be- ' cause “several equally tenable inferences” may be drawn from such inaction, “including the inference that the existing legislation already incorporated the offered change.” ’
“(Citations omitted.)
“In this case, it is possible to conclude ... that the legislature understood the original chemical-endangerment statute to protect only children who were already born. It is also possible to conclude ... that the legislature understood the original chemical-endangerment statute to protect all children — born and unborn — and that proposals to amend the statute were unnecessary attempts to clarify the legislature’s original intent. This Court cannot determine the intentions of the legislature apart from the language in the chemical-endangerment statute that is now before us; ... the plain meaning of that statutory language is to include within its protection unborn children. See LTV Corp., supra; Beeton v. Rhone-Poulenc, Inc., 706 So.2d 1134, 1139 (Ala.1997) (‘ “ ‘[Subsequent legislative history[5] is not helpful as a guide to understanding a law.” ’ -.(quoting Covalt v. Carey Canada Inc., 860 F.2d 1434, 1438 (7th Cir.1988), citing in turn Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988))).”
Ankrom, 152 So.3d at 416. Because the legislature could have failed to pass the proposed amendments for a plethora of reasons, Hicks’s argument that the legislature’s inaction in that regard should influence our interpretation of the chemical-endangerment statute is unpersuasive.

B. Public Policy

Hicks argues that the overwhelming majority of medical and public-health organizations agree that, as a matter of public *63 policy, prosecuting women for drug use during pregnancy does not protect human life. Hicks’s brief, at p. 17.
In Ankrom, this Court rejected the notion that public-policy arguments should play a role in this Court’s interpretation of a statute:
“Although the briefs of the petitioners and of several amici curiae recite numerous potential public-policy implications of this Court’s decision in these cases, policy cannot be the determining factor in our decision; public-policy arguments should be directed to the legislature, not to this Court. As we stated in Boles v. Parris, 952 So.2d 364, 367 (Ala.2006): ‘[I]t is well established that the legislature, and not this Court, has the exclusive domain to formulate public policy in Alabama.’
“This is not because policy is unimportant but because policy arguments are ill-suited to judicial resolution. See M & Assocs., Inc. v. City of Irondale, 723 So.2d 592, 599 (Ala.1998) (‘“There are reasonable policy arguments on both sides of this issue; however, the Legislature is the body that must choose between such conflicting policy considerations.” ’ (quoting City of Tuscaloosa v. Tuscaloosa Vending Co., 545 So.2d 13, 14 (Ala.1989))). For this reason, although we recognize that the public policy of this State is relevant to the application of this statute, we decline to address the petitioners’ public-policy arguments; we leave those matters for resolution by the legislature. As we stated in Marsh v. Green, 782 So.2d 223, 231 (Ala.2000), ‘[tjhese concerns deal with the wisdom of legislative policy rather than constitutional issues. Matters of public policy are for the Legislature and, whether wise or unwise, legislative policies are of no concern to the courts.’ See also Cavalier Mfg., Inc. v. Jackson, 823 So.2d 1237, 1248 (Ala.2001), overruled on other grounds, Ex parte Thicklin, 824 So.2d 723 (Ala. 2002) (‘The Legislature is endowed with the exclusive domain to formulate public policy in Alabama, a-domain upon which the judiciary shall not trod.’). We therefore refrain from considering the policy issues raised by the petitionfers or amici curiae, limiting ourselves to interpreting the text of the chemical-endangerment statute.”
Ankrom, 152 So.3d at 420. For the reasons set forth in Ankrom, we refrain from considering Hick’s public-policy arguments.

C. Constitutional Arguments

Hicks argues that the application of the chemical-endangerment statute is unconstitutional as applied to her because, she says, the statute is vague and, therefore, did not provide her with adequate notice of what conduct was prohibited, in violation of her due-process rights. Hicks’s brief, at p. 24. Hicks argues that a vague statute is one that fails to give adequate “ ‘ “ ‘notice of the required conduct to one who would avoid its penalties.’ ” ’ ” Vaughn v. State, 880 So.2d 1178, 1194 (Ala.Crim.App.2003) (quoting McCall v. State, 565 So.2d 1163, 1165 (Ala.Crim. App.1990), quoting in turn Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 96 L.Ed. 367 (1952)). Hicks also argues that “[m]en of common intelligence cannot be required to guess at the meaning of [an] enactment.” Winters v. New York, 333 U.S. 507, 515, 68 S.Ct. 665, 92 L.Ed. 840 (1948). To support her arguments, Hicks cites Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983), in which the United States Supreme Court stated that “the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary *64 people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.” Hicks argues that the chemieal-endangerment statute is facially vague because it does not define the word “child,” leaving her unaware that it includes unborn children. Hicks also argues that the prosecution of women under similar circumstances, as well as news reports of such prosecutions, did not provide her with adequate notice that her conduct was criminal. Hicks, therefore, argues that she was not afforded constitutionally adequate notice that her conduct would violate the chemieal-endangerment statute. Hicks’s brief, at pp. 24-25.
In Vaughn v. State, supra, the Court of Criminal Appeals explained the doctrine of vagueness:
“ ‘ “The doctrine of vagueness ... originates in the due process clause of the Fourteenth Amendment, see Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939), and is the basis for striking down legislation which contains insufficient warning of what conduct is unlawful, see United States v. National Dairy Products Corporation, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).
“ ‘ “Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed. United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989, 996 (1954). A vague statute does not give adequate ‘notice of the required conduct to one who would avoid its penalties,’ Boyce Motor Lines v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367, 371 (195[2]), is not ‘sufficiently focused to forewarn of both its reach and coverage,’ United States v. National Dairy Products Corporation, 372 U.S. at 33, 83 S.Ct. at 598, 9 L.Ed.2d at 566, and ‘may trap the innocent by not providing fair warning,’ Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227-28 (1972).
“ ‘ “As the United States Supreme Court observed in Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840.(1948):
“ ‘ “ ‘There must be ascertainable standards of guilt. Men of common intelligence cannot be required to guess at the meaning of the enactment. The vagueness may be from uncertainty in regard to persons within the scope of the act, or in regard to the applicable tests to ascertain guilt.’
“ ‘ “333 U.S. at 515-16, 68 S.Ct. at 670, 92 [L.Ed. at] 849-50 [citations omitted].”
“ McCrary v. State, 429 So.2d 1121, 1123-24 (Ala.Cr.App.1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273, 78 L.Ed.2d 254 (1983).’
‘McCall v. State, 565 So.2d 1163, 1165 (Ala.Crim.App.1990).
“ ‘ “ ‘As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.’ Kolender v. Lawson, 461 U.S. 352 [357], 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). A statute challenged for vagueness must therefore be scrutinized to determine whether it provides both fair notice to the public that certain conduct is proscribed and minimal guidelines to aid *65 officials in the enforcement of that proscription. See Kolender, supra; Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 38 L.Ed.2d 222 (1972).” ’
“Timmons v. City of Montgomery, 641 So.2d 1268, 1264 (Ala.Crim.App.1993), quoting McCorkle v. State, 446 So.2d 684, 685 (Ala.Crim.App.1983). However,
“ ‘ “ ‘[t]his prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for “[i]n most English words and phrases there lurk uncertainties.” Robinson v. United States, 324 U.S. 282, 286, 65 S.Ct. 666, 668, 89 L.Ed. 944 (1945). Even trained lawyers may find it necessary to consult legal dictionaries, treatises, and judicial opinions before they may say with any certainty what some statutes may compel or forbid.’ ” ’
“Sterling v. State, 701 So.2d 71, 73 (Ala.Crim.App.1997), quoting Culbreath v. State, 667 So.2d 156, 158 (Ala.Crim.App.1995), abrogated on other grounds by Hayes v. State, 717 So.2d 30 (Ala.Crim.App.1997), quoting in turn, Rose v. Locke, 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).
“ ‘ “Mere difficulty of ascertaining its meaning or the fact that it is susceptible of different interpretations will not render a statute or ordinance too vague or uncertain to be enforced.’” Scott & Scott, Inc. v. City of Mountain Brook, 844 So.2d 577, 589' (Ala.2002), quoting City of Birmingham v. Samford, 274 Ala. 367, 372, 149 So.2d 271, 275 (1963). The judicial power to declare a statute void for vagueness ‘should be exercised only when a statute is so incomplete, so irreconcilably conflicting, or so vague or indefinite, that it cannot be executed, and the court is unable, by the application of known and accepted rules of construction, to determine, with any reasonable degree of certainty, what the legislature intended.’ Jansen v. State ex rel. Downing, 273 Ala. 166, 170, 137 So.2d 47, 50 (1962).”
Vaughn v. State, 880 So.2d at 1194-96. Therefore, to survive scrutiny under the void-for-vagueness doctrine, the chemical-endangerment statute must provide fair notice to the public of what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement.
 As discussed above, by its plain meaning, the chemical-endangerment statute unambiguously protects all children, born and unborn, from exposure to controlled substances. A person is presumed to know the law and is expected to conform his conduct to it. See § 13A-2-6(b), Ala.Code 1975 (“A person is not relieved of criminal liability for conduct because he engages in that conduct under a mistaken belief that it does not, as a matter of law, constitute an offense....”); Ex parte Tuscaloosa Cnty., 770 So.2d 602, 605 (Ala.2000) (“Mistake of law, however, is not a defense to a crime.”); White v. Birmingham Post Co., 235 Ala. 278, 279, 178 So. 449, 450 (1938) (“All persons are presumed to know the law.”); Gordon v. State, 52 Ala. 308, 310 (1875) (“Ignorance of the law is never an excuse, whether a party is charged civilly or criminally.”). Accordingly, because the chemical-endangerment statute is unambiguous, it provides “fair notice to the public that certain' conduct is proscribed.” Timmons v. City of Montgomery, 641 So.2d 1263, 1264 (Ala.Crim.App.1993) (quoting McCorkle v. State, 446 So.2d 684, 685 (Ala.Crim.App.1983)).
Hicks has presented no evidence indicating that the chemical-endangerment stat *66 ute “encourage[s] arbitrary and discriminatory enforcement.” Kolender, 461 U.S. at 361. Therefore, Hicks has not demonstrated that the chemical-endangerment statute is unconstitutionally vague.

IV. Conclusion

Consistent with this Court’s opinion in Ankrom, by its plain meaning, the word “child” in the chemical-endangerment statute includes an unborn child, and, therefore, the statute furthers the State’s interest in protecting the life of children from the earliest stages of their development. See § 26-22-1(a), Ala.Code 1975 (“The public policy of the State of Alabama is to protect life, born, and unborn.”); see also Ankrom, 152 So.3d at 420 (Parker, J., concurring specially) (explaining that the application of the chemical-endangerment statute to protect the life of unborn children “is consistent with many statutes and decisions throughout our nation that recognize unborn children as persons with legally enforceable rights in many areas of the law”). Accordingly, we affirm the judgment of the Court of Criminal Appeals.
AFFIRMED.
STUART, BOLIN, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and PARKER, J., concur specially.
SHAW, J., concurs in the result.
MURDOCK, J., dissents.

. We discuss Hicks’s constitutional arguments in Part III.C of this opinion.

.This Court expressly rejected .the Court of Criminal Appeals' limitation of the statute to only unborn children who are viable at the time of their exposure to a controlled substance. See Ankrom, 152 So.3d at 382.

. Chapter 14 is titled “Reporting of Child Abuse or Neglect.”

. Chapter 16 is titled "Child Abuse and Neglect.”

. Jefferson further explained:
“Neither aiming at originality of principle or sentiment, nor yet copied from any particular and previous writing, [the Declaration] was intended to be an expression of the American mind, and to give to that expression the proper tone and spirit called for by the occasion. All its authority rests *67 then on the harmonizing sentiments of the day, whether expressed in conversation, in letters, printed essays, or in the elementary books of public right, as Aristotle, Cicero, Locke, Sidney, [etc.]. The historical documents which you mention as in your possession, ought all to be found, and I am persuaded you will find, to be corroborative of the facts and principles advanced in that Declaration.”
Letter to Heniy Lee, May 8, 1825, VIII Writings at 407.

. Blackstone’s reference to the point in time when the unborn child "is able to stir” or when "a woman is quick with child,” 1 Commentaries at *125, acknowledges the notice sufficient for criminal intent to form under the common law, but should not be read as a definitive statement about when life begins in fact. Indeed, Blackstone (in footnote “o,” id.) quoted a relevant passage from Henry de Bracton's classic work, On the Laws and Customs of England, namely, "If one strikes a pregnant woman or gives her poison in order to procure an abortion, if the foetus is already formed or quickened, especially if it is quickened, he commits homicide.” II Bracton, On the Laws and Customs of England 341 (S.E. Thome trans., 1968) (emphasis added), cited in Charles I. Lugosi, When Abortion Was A Crime: A Historical Perspective, 83 U. Det. Mercy L.Rev. 51, 53 (2006). Modern medicine and prenatal technology, of course, have given us a clearer and much earlier view into when a “foetus is already formed” or when a woman is pregnant and has notice thereof. As this Court first noted in 1973: " ' "Medical authority has recognized long since that the child is in existence from the moment of conception_Mack v. Carmack, 79 So.3d 597, 602 (Ala.2011) (quoting Wolfe v. Isbell, 291 Ala. 327, 330, 280 So.2d 758, 760 (1973), quoting, in turn, Prosser, Law of Torts 336 (4th ed.1971)).